NOVEMBER TERM, 1914. 69

New Amsterdam Casualty Co. *v.* New Palestine Bank—59 Ind. App. 69.

## New Amsterdam Casualty Company *v.* New Palestine Bank

[No. 8,666. Filed January 27, 1915. Rehearing denied April 1, 1915. Transfer denied May 13, 1915.]

1. INSURANCE.—*Validity of Policy.—Application.—Knowledge of Agent.—Return of Policy for Correction.—Cancellation.*—In an action on a policy of insurance against burglary, findings of the trial court, sustained by the evidence, showing that erroneous statements in the application were made by defendant's agents, for which plaintiff was in no way responsible; that the application was forwarded by such agents to defendant and the policy issued by it in conformity thereto; that such policy was delivered by such agents to plaintiff who accepted and retained it for a time and then returned it for the sole purpose of having mistakes therein occasioned by the application corrected; and that defendant's agents, at the time the application was placed, knew the truth as to the facts misrepresented therein and specifically stated that they had all the information that was necessary; show that the policy was valid as written and that its return for correction was not an offer for cancellation, or a refusal to accept the contract. p. 74.

2. INSURANCE.—*Misrepresentations in Application.—Knowledge of Agent.—Estoppel.*—Where misrepresentations in an application for insurance were made by the agent of the insurer, with knowledge of the truth, the insurer is estopped from claiming that the policy is void because of false warranties. p. 75.

3. INSURANCE.—*Misrepresentations in Application.—Knowledge of Agent.—Cancellation.*—While an insurer may cancel a policy upon learning that there were misrepresentations in the application, even though such misrepresentations were made by insurers' agent with knowledge of the facts and without fault of the insured, such policy is nevertheless capable of enforcement until it is duly cancelled and the insured notified of such fact. p. 75.

4. INSURANCE.—*Action.—Parties.—Banking Partnership.—Action in Firm Name.*—Where partners engaged in the banking business sued in the bank name on an insurance policy purporting to name the individuals composing such partnership, but which in fact did not name them all, the insurance company could not avoid liability on the theory that the policy would support a recovery only in favor of the partners named therein, since under §3413 Burns 1914, Acts 1907 p. 174, §12, the bank had power to contract in the bank name and to sue and be sued, and the policy having been issued to it made it the real party in interest and the proper party to bring the action. p. 76.

5. INSURANCE.—*Denial of Liability.*—*Right to Maintain Action.*—Although a policy of insurance provides that no action thereon shall be brought until three months after making proof of loss, an action thereon may be brought immediately when liability is denied, although three months from the time of loss have not elapsed, since such denial of liability is a waiver of proof of loss. p. 76.

6. INSURANCE.—*Action.*—*Evidence.*—In an action on an insurance policy letters passing between the insurer and its agent relative to the issuance and subsequent cancellation of the policy were inadmissible in evidence, the same being hearsay and not binding on insured. p. 77.

From Superior Court of Marion County (88,341) ; *Charles J. Orbison,* Judge.

Action by the New Palestine Bank against the New Amsterdam Casualty Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Harvey J. Elam, James W. Fesler* and *John B. Elam,* for appellant.

*Guilford A. Deitch* and *Frank C. West,* for appellee.

IBACH, J.—Appellee recovered from appellant upon a policy of burglary insurance. The important question in the appeal is whether the policy was in force. This question arises upon the demurrer to the complaint, upon exception to the conclusions of law upon the facts found, and upon the motion for new trial.

Briefly, the facts found by the court show that the New Palestine Bank, a private bank, operated under the statutes of this State, with authority to contract, sue and be sued in its above name, organized as a partnership, was in the year 1911, composed of four partners, John H. Binford, Edward Fink, Charles J. Richman and Henry Fralich. In February and March, 1911, this bank, through Charles J. Richman, began negotiations with H. H. Woodsmall & Company, general agents for appellant, with reference to securing a policy of burglary insurance for said bank, and in order to inform said general agents of the facts relating to the bank as an

NOVEMBER TERM, 1914.          71

New Amsterdam Casualty Co. *v.* New Palestine Bank—59 Ind. App. 69.

insurance risk, submitted to them a policy of insurance then in force with the 'National Surety Company, which policy contained the names of all four partners, showed that it would expire at noon on February 27, 1911, and that the bank had no other burglary insurance. Also, about March 10, 1911, Charles J. Richman, submitted to said general agents a trial application for burglary insurance in favor of the bank, for the purpose of ascertaining the premium rate of burglary insurance on the bank, and not with the present intention of applying for insurance; this application gave the names of Fink and Binford only as the partners constituting the bank, and stated that it had insurance in the National Surety Company. During these negotiations the general agents knew personally that Richman was a partner in the New Palestine Bank, and knew from the policy of insurance submitted to Woodsmall that Richman and Fralich were partners. On March 13, 1911, Woodsmall quoted a rate of $30.80 for the first year, and $23.10 each for the second and third years on a three-year policy. Negotiations then ceased until September 9, 1911, when Richman called at Woodsmall's office, said he was ready to take out the burglary insurance on the New Palestine Bank, and asked if he needed to fill out an application. Woodsmall told him it was unnecessary, as the trial application before filed was still with the company. No further information was given as to the bank, nor were any further inquiries made by the appellant or any of its agents. No written application was made out on September 9, 1911, by Richman, or any of the other partners. On that date Richman applied as agent of the bank to H. H. Woodsmall & Company, agents of appellant, for a policy of burglary insurance in the amount of $5,000, to be issued for a term of three years at the rates above quoted, "insuring said bank for direct loss by burglary of money, bullion and securities feloniously, violently and forcibly abstracted from the safe or vault in said bank if entry into said safe or vault should be made

through force or violence by the use of tools or explosives and for direct loss by damage to the said safe or vault caused by entry or attempt at entry into such safe or vault." Thereupon Woodsmall applied immediately to appellant's home office for said policy, but as rates had increased since March, appellant's officers at first refused to issue a policy at the original premium quoted, but finally did so, and on September 18, 1911, issued its policy in the sum of $5,000 to the New Palestine Bank, naming the New Palestine Bank as the assured, and mailed the policy to its agents, H. H. Woodsmall & Company, for delivery to the assured. The agents on September 21, 1911, delivered the policy to the bank, accompanied with a letter, closing with the words, "We trust you will find the same (the policy) entirely satisfactory." This policy was for one year dated on September 18, 1911, and provided for renewals for the period of two years after that date, at the rates quoted, the policy being the first installment of a three-year contract which was to become effective on September 18, 1911. H. H. Woodsmall & Company, at the time of these negotiations, and at the time said policy was issued, were the general agents of appellant and had authority to countersign policies issued by appellant; to solicit applications for appellant; to make delivery of policies issued by appellant; and to collect premiums on policies issued by appellant. The premium for the first year for said policy was not paid by appellee, but the agents delivered the policy without making a demand for prepayment of the premium. At various times the agents had delivered policies issued by appellant to applicants therefor without prepayment of premium. The policy was accepted by appellee on September 21, 1911. On September 30, 1911, appellee returned the policy to the general agents of appellant at Indianapolis for the sole purpose of having the names of Fralich and Richman inserted in the schedule, and to have the schedule show no other insurance, and requested that the policy be returned as soon

as the corrections were made, and the policy was not returned by appellee for cancellation or any other purpose than to have the above named corrections made. When the policy was returned by the appellee for correction, the following letter was sent therewith:

"Please find herewith policy for New Palestine Bank for correction as follows: Schedule Statement 2. Names of persons constituting same are Henry Fralich and Charles J. Richman in addition to those named in the policy. Statement 19. We carry no other insurance, it is here stated that we carry a policy in the National Surety. Please correct and return to me. Yours truly, Chas. J. Richman."

Woodsmall forwarded the policy to the home office for alterations as requested, and between October 8 and 12, 1911, received notice from the home office that the company refused the business. The policy was retained by the home office and marked cancelled, and no other policy issued, and no demand for the premium was ever made from appellee, and appellee never tendered the premium until after the loss when the tender was refused.

At some time during the night of October 20-21, 1911, the building in which the New Palestine Bank conducted its bank business and in which the safe and vault specifically described in the policy sued on were contained, was forced open by some persons unknown to appellee and the safe and vaults of the bank were forced open and entry gained thereto by persons with burglary intent, by the use of tools and explosives, and the person or persons feloniously, violently and forcibly, abstracted during the nighttime from the safe, cash, money and bullion to the amount of $2,487.77, and did further by the use of the tools and explosives while so making such entry into the safe and vaults, damage the safe and vaults in the sum of $605. On October 23, 1911, appellee, by night letter, and also by written letter, mailed to appellant at its home office, notified appellant of the burglary and loss under the policy and requested that

blanks for making proofs of loss be sent appellee at once. On October 24, 1911, appellant denied that it was liable to appellee in any amount on account of the loss and refused to furnish appellee with blanks upon which to make proofs of loss. Appellee drafted proofs of loss and forwarded same to appellant at its home office; the proofs of loss were received by appellant and were returned to appellee, appellant at the time again denying liability to appellee in any amount on account of the loss. Immediately after the loss, appellee made demand upon H. H. Woodsmall & Company for return of the policy and offered at the time to pay the premium on account of the policy, but delivery of the policy and payment of premium thereon were refused by the general agent who then and there informed appellee that the policy had been cancelled by appellant. Appellant did not at any time prior to the loss notify appellee in writing or otherwise of its desire to cancel the policy. The court's conclusion of law was that there was due appellee upon the policy $3,092.77 principal and $270.59 interest, from which appellant was entitled to have deducted the first year's premium of $30.80, leaving a balance due of $3,332.56.

Among other grounds for new trial, appellant assigned that the decision of the court was not sustained by sufficient evidence and was contrary to law. Appellant argues that there was no valid insurance contract because the minds of the parties had not met on all the material features of it, that there was no complete proposition made by one 1. side and accepted by the other. From the findings of the court, which are supported by the evidence, it appears that the erroneous statements in the application for insurance sent to appellant on September 9, were made by appellant's agents, and not by appellee. This application, which constituted a definite proposition, was accepted by appellant's writing a policy based thereon, which in all material respects conformed to the application, and mailing it to appellant's agents who delivered it unconditionally to

appellee. Appellee retained and accepted this policy, but appellant's agents having made misstatements in certain representations, appellee returned the policy in order to have these mistakes corrected and for no other purpose. According to the facts found, appellees were not responsible for these mistaken representations, but appellant's agent was responsible therefor. The court found, and the evidence showed, that the agent not only had personal knowledge of the truth as to the facts misrepresented, but that he specifically told appellee's agent that he did not need any more information, and had all that was necessary. The policy was valid as written. Its return for correction was not an offer for cancellation, or a refusal to accept the contract. See *Equitable Life Assur. Soc.* v. *Perkins* (1908), 41 Ind. App. 183, 80 N. E. 682; *Swing* v. *Marion Pulp Co.* (1911), 47 Ind. App. 199, 93 N. E. 1004; *Krause* v. *Equitable Life Assur. Soc.* (1894), 99 Mich. 461, 58 N. W. 496; *Baldwin* v. *Pennsylvania Fire Ins. Co.* (1903), 206 Pa. St. 248, 55 Atl. 970.

Since the misrepresentations were made by the agent of appellant, with knowledge of the truth, his knowledge estops the company from claiming that the policy was void

2. because of false warranties. *German-American Ins. Co.* v. *Yeagley* (1904), 163 Ind. 651, 71 N. E. 897, 2 Ann. Cas. 275; *Phoenix Ins. Co.* v. *Allen* (1887),

3. 109 Ind. 273, 10 N. E. 85; *Metropolitan Life Ins. Co.* v. *Johnson* (1912), 49 Ind. App. 233, 94 N. E. 785;

5 Elliott, Contracts §§4185, 4186, and cases cited. It is probable that upon receiving notice of the misstatements in the application, the insurer would have ground to cancel the policy upon notice to the insured, and in fact, the policy reserves the absolute right to the insurer to cancel the policy at any time, upon written notice to the insured and tender of the unearned portion of the premium paid. But in this case notice of cancellation was never served in the manner provided in the policy, and no notice of any kind of the

attempted cancellation was brought to appellee until after the loss. The policy was in force at the time it was returned for correction, and would remain in force until duly cancelled. No attempted cancellation would be effective until brought to the notice of appellee. We therefore must conclude that the policy was in force at the time of the loss.

It is also urged that the policy, even if valid, will support a recovery only in favor of two of the partners, and not in favor of all of them. In this we do not agree.

4. The policy was not made out to Fink and Binford, but to the New Palestine Bank, which had powers to contract in such name, to sue and be sued, under §3413 Burns 1914, Acts 1907 p. 174, §12. Under this section, a judgment against the bank binds all the persons interested in the bank, and conversely, a judgment in its favor would benefit all persons interested. Since the policy was issued to the bank, it is the real party in interest, and the proper party to bring the action.

Although one condition of the policy provides that no suit shall be brought until three months after the particulars of the loss have been furnished to the insurer, this

5. action, although commenced in less than three months after the time of the loss, is not prematurely brought, for by denying liability, proofs of loss were waived, and the action might be brought immediately. *Phoenix Ins. Co.* v. *Flowers* (1910), 124 S. W. (Ky.) 403; *Miles* v. *Casualty Co.* (1909), 115 N. Y. Supp. 1; *Depue* v. *Travelers Ins. Co.* (1909), 166 Fed. 183; *Jensen* v. *Palatine Ins. Co.* (1908), 81 Neb. 523, 116 N. W. 286; *Jennings* v. *Brotherhood Acc. Co.* (1908), 44 Colo. 68, 96 Pac. 982, 130 Am. St. 109, 18 L. R. A. (N. S.) 109; *Ohio Farmers Ins. Co.* v. *Vogel* (1906), 166 Ind. 239, 76 N. E. 977, 117 Am. St. 382, 3 L. R. A. (N. S.) 966, 9 Ann. Cas. 91; *Orient Ins. Co.* v. *Kaptur* (1911), 176 Ind. 308, 95 N. E. 230.

There was no error in the court's excluding from admission in evidence exhibits 21, 22 and 23, for these were letters

passing between appellant's agent Woodsmall and
6. appellant relative to the issuing of the policy and its
attempted cancellation, and were, as to appellee,
hearsay, and could not bind it.

No error appears, and the judgment is affirmed.

NOTE.—Reported in 107 N. E. 554. As to the law of burglary
and theft insurance, see 46 L. R. A. (N. S.) 561. Waiver of con-
ditions in insurance policy by insurer's knowledge of existing
facts, see 2 Ann. Cas. 280; 18 Ann. Cas. 686. See, also, under (4)
30 Cyc. 560, 561; (6) 38 Cyc. 1915 Anno. 277-new.