**HOUSTON FIRE AND CASUALTY IN-SURANCE COMPANY, Appellant,**

**v.**

**PRITCHARD & ABBOTT et al., Appellees.**

**No. 15545.**

Court of Civil Appeals of Texas.

Fort Worth.

Oct. 15, 1954.

Rehearing Denied Nov. 12, 1954.

Cantey, Hanger, Johnson, Scarborough & Gooch, Howard Barker, George R. Bridgman and Charles L. Stephens, Fort Worth, for appellant.

Buck, Harris & Buck and Harry N. Harris, Fort Worth, for appellee, Commercial Standard Ins. Co.

Chester Collins, Fort Worth, for appellee, Pritchard & Abbott.

RENFRO, Justice.

Appellee Pritchard & Abbott, a partnership, brought suit against appellant Houston Fire and Casualty Insurance Company, to recover $10,000 expended by Pritchard & Abbott in settlement of a claim. Appellee Commercial Standard Insurance Company was brought into the suit as a third party defendant by appellant.

It was agreed by all parties that the claim settlement made by Pritchard & Abbott was reasonable. The only issue before the trial court was which of the two insurance companies was liable to Pritchard & Abbott.

Trial was to the court without a jury, resulting in a judgment against Houston Fire and Casualty Insurance Company, and

finding Commercial Standard Insurance Company not liable.

The trial court found, in part: "on and prior to February 19, 1949, B. A. McPhail, an insurance broker and long-time friend of Ed S. Pritchard, brokered policies through Kenneth Murchison & Company of Dallas, who represented Houston Fire and ·Casualty Insurance Company. Prior to March 8, 1949, McPhail solicited Pritchard & Abbott's liability insurance and in February, 1949, procured such business. The first policy, effective from March 8, 1949, to March 8, 1950, was issued by Murchison & Co. In January, 1950, Pritchard told McPhail to renew the policy then in force to take effect on the expiration of the current policy. McPhail ordered the renewal policy from Murchison & Co. and on February 22, 1950, Murchison & Co. issued the renewal policy and mailed same to McPhail, who in turn sent it to Pritchard & Abbott. McPhail was the agent of Pritchard & Abbott. The policy arrived in Pritchard & Abbott's office about March 1st. About a ·week prior to the expiration date of the old policy, Mrs. Dollar, employee of Pritchard & Abbott in charge of· insurance policies, received the renewal policy and placed it in a desk drawer with bills to be paid. She forgot about receiving the policy and on March 9th told Abbott they had no liability insurance. Abbott immediately called Pritchard, who·was in West Texas, and told him they had no coverage. Pritchard, thinking Mc-Phail had let him down, immediately called Waddell & ·Blank, insurance agents in Odessa, who issued Pritchard & Abbott a binder covering their liability losses, such binder being issued by appellee Commercial Standard Insurance Company through Waddell & Blank. The binder, according to the trial court, was worded in such a way that it only covered vehicles owned by Pritchard & Abbott not currently covered and vehicles currently covered would be covered at the time of the expiration of the policy covering them. On March 9, 1950, both Pritchard and Abbott were of the opinion that McPhail had not procured the renewal policy for them. They did not know it was in their office. On March 9, 1950, one of Pritchard & Abbott's automobiles was involved in a wreck and a man seriously injured. The accident occurred after the Commercial Standard Insurance Company's binder was issued. Pritchard & Abbott notified Commercial Standard of the loss, thinking they had no insurance with appellant. The court found that B. A. McPhail, Pritchard & Abbott's broker, accepted the renewal policy involved for Pritchard & Abbott at the time he received it. in the mail from Murchison & Co. shortly after February 22, 1950. Pritchard & Abbott at no time intended to revoke the Houston Fire and·Casualty Insurance Company policy involved. In securing a binder from Commercial Standard they were acting under the mistaken belief that they had no policy at all with Houston Fire and Casualty."

The court concluded as a matter of law: "McPhail had authority to accept the policy for Pritchard & Abbott and when he procured the renewal policy in accordance with instructions from Pritchard & Abbott and forwarded it to them, he accepted the policy for them and it became effective at the time of his acceptance. The Commercial Standard Insurance Company binder was not enforceable ·because Pritchard & Abbott and the agents for Commercial Standard were all acting under mistaken facts when the binder was issued. The binder, which provided 'this binder covers all vehicles owned by insured that are not currently covered,' did not cover the loss because the vehicle was already covered by the Houston Fire and Casualty policy. Pritchard & Abbott did not revoke the Houston Fire and Casualty Insurance Company policy because everything they did was under the mistaken belief that their broker had failed to procure the policy for them. The Houston Fire and Casualty Insurance policy covered this loss and Commercial Standard Insurance Company was not liable to anyone involved in the suit."

The appellant contends the renewal policy was never consummated as a valid and existing contract of insurance, in that there was no meeting of the minds between

Pritchard & Abbott and Houston Fire and Casualty, and no mutuality of obligation between them; and further there was no overt act of acceptance manifested by them prior to the loss in question; and that it was not shown that the policy was received prior to the expiration date of the old policy; and contends the court erred in finding that the Commercial Standard binder never became effective.

In support of its position, appellant has raised numerous points of error attacking findings of fact and conclusions of law made by the trial court, and by other points has complained of the failure of the court to find certain requested findings and conclusions.

Appellant argues the fundamental question presented is whether the offeree of a tendered automobile liability insurance policy can claim the benefits of such policy absent any overt act manifesting acceptance of such tendered policy until after a loss has occurred on the risk to be covered by the offered policy and when in fact such offeree did not even know of the existence of the tendered policy.

Contracts of insurance are governed by the same rules as other contracts. National Security Life & Casualty Co. v. Davis, Tex., 257 S.W.2d 943. "A renewal agreement, whereby a contract of insurance may be continued in force after its expiration, is in itself a contract of insurance. * * * A binding contract of renewal must be clearly established, and must have all the essentials of a valid contract, * * *." 44 C.J.S., Insurance, § 283, pp. 1125, 1126. As a general rule, the delivery of a policy by the insurer to the insured upon the expiration of a policy without request by the insured is an offer or proposal which must be accepted by the insured before a contract of insurance is effected. Of course the offer or proposal may be made either by the insured or by the company. Hodge v. National Fidelity Ins. Co., 221 S.C. 33, 68 S.E.2d 636.

The trial court's finding is, in effect, that the offer was made by the insured and accepted by the insurer. We must therefore examine the evidence to determine if the court's finding is supported by the record. Pritchard's testimony is, in substance, that on the first or second day of January, 1950, he closed the deal with McPhail for renewal of the policy with Houston Fire; the coverage to be 25/50, the same as in the original policy; that they just renewed the same policy, such renewal to be for a term of one year.

We think it is clear from the above that appellee Pritchard & Abbott made an offer to be transmitted by their broker to the appellant for renewal of the policy. In response to such request, McPhail did transmit the request to Murchison & Co., duly authorized agent of the appellant, who issued the policy. The fact that the request was made two months in advance of the expiration date of the current policy did not invalidate the renewal. Orient Ins. Co. v. Wingfield, 49 Tex.Civ. App. 202, 108 S.W. 788; 44 C.J.S., Insurance, § 283, p. 1127.

Appellant also attacks the finding of the court that the policy was received by Pritchard & Abbott prior to the accident. The records of the Company show the renewal policy was mailed to McPhail. In a written statement dated April 18, 1950, McPhail stated that he mailed the policy to Pritchard & Abbott. Mrs. Dollar, custodian of the policies in Pritchard & Abbott's office, testified she received the policy at least a week or ten days before March 8th and placed it in a drawer of her desk with bills to be paid and with the intention of paying for it. Bills were paid approximately the 20th of each month.

Pritchard ordered the renewal policy. It was duly issued in compliance with his request and mailed to McPhail. An unconditional acceptance by the company of an application for insurance completes the contract and makes it binding on both parties unless the application otherwise provides. 44 C.J.S., Insurance, § 232, p. 971.

. So it appears from the record that everything was done by all parties required to be done except the payment of the premium by Pritchard & Abbott. Appellant does not contend that such payment was necessary before the renewal policy became effective.

Appellant contends it could not have held Pritchard & Abbott liable for the premium. This argument is also based on the theory that the renewal policy was an unsolicited offer by appellant. Under the facts as reflected by the record, we are of the opinion the contract was completed and that Pritchard & Abbott were obligated to pay the premium on the renewal policy. When they discovered that they did in fact have the policy in their possession they immediately tendered payment of the premium, which was rejected by appellant.

Since we have determined that the offer for renewal was made by the insured, we must disagree with appellant in its contention that after receiving the policy it was necessary for the insured to accept by some overt act. Their actions were consistent with acceptance. Pritchard requested McPhail to renew the policy on the same terms and for the same length of time as the original policy. After the policy was issued, mailed to McPhail and by McPhail mailed to Pritchard & Abbott, Mrs. Dollar physically took possession of the policy on delivery and placed it in a desk drawer containing bills to be paid. We think it is reasonable to infer that she intended to pay for the policy or she would not have included it in the bills to be paid in a drawer of her desk. Pritchard & Abbott knew that the original policy expired on March 8, 1950, but made no effort to obtain insurance in any other company. Only when the 9th arrived and they were under the impression that McPhail had failed them did they take steps to get insurance elsewhere. When the policy was found in Mrs. Dollar's desk drawer, some time subsequent to March 10th, Pritchard & Abbott tendered immediate payment for the premium.

■ The trial court found that all the terms of the renewal contract had been agreed upon between the parties and that nothing remained to be done by either party to make the renewal policy effective, and hence that it was effective as of the date of the accident, and our study of the voluminous record convinces us his findings are supported by the evidence.

We also overrule appellant's contention that the court erred in absolving Commercial Standard Insurance Company from any liability on the rider it issued. As heretofore stated, on March 9th, Pritchard, thinking that McPhail had "let him down" and that appellant had not issued a renewal policy, called Waddell, agent for Commercial Standard, by telephone and secured an oral binder. On the same day, and prior to the accident in question, a written binder was issued by Commercial Standard, reading in part as follows: "This binder covers all vehicles owned by the assured which are not currently covered and the vehicles, if any, which are now covered by some other carrier will be picked up on expiration." It is without dispute that Pritchard & Abbott were of the opinion they were without coverage when Pritchard talked to Waddell. It is without dispute that Pritchard & Abbott wanted only one policy and that in talking to Waddell they were not asking for additional coverage but asking for the identical coverage they thought appellant had refused.

The record upholds the trial court's finding that Pritchard & Abbott and Commercial Standard were acting under a mistake of facts when the binder was issued, namely, that no insurance then covered their fleet of cars.

■ Appellant contends that there is no showing that the condition, "not currently covered," contained in the written confirmation, was imposed in the oral contract made over the telephone between Pritchard and Waddell. The record does not disclose the exact conversation between the two men. Pritchard testified he called Waddell and told him their predicament. In his testimony he did not go into detail as to what was said by him to Wad-

dell and by Waddell to him. Under the circumstances we must accept the written binder at its face value that the parties did not intend to and did not cover any vehicles then insured by some other policy. Since the vehicle was covered by the renewal policy of appellant, we affirm the trial court's judgment holding that the policy and binder issued by Commercial Standard never came into effect and did not cover the accident involved, and that appellee Pritchard & Abbott are entitled to recovery against appellant.

The judgment of the trial court is affirmed.