HOUSTON FIRE AND CASUALTY INSURANCE COMPANY
v. PRITCHARD & ABBOTT ET AL

No. A-5003. Decided October 5, 1955.
Rehearing overruled November 30, 1955.
(283 S.W. 2d Series 728)

*Cantey, Hanger, Johnson, Scarborough & Gooch, Howard Barker, George R. Bridgeman, Charles L. Stephens,* all of Fort Worth, and *Black & Stayton* and *John W. Stayton,* all of Austin, for petitioner.

The Court of Civil Appeals erred in holding that the insurance policy issued by Commercial Standard did not cover respondent's loss and that as a consequence the loss should be prorated between the two insurance companies. Also in holding that the contract with Commercial Standard never became effective because issued under the mistaken belief that there was no other insurance in effect. Pacific Fire Ins. Co. v. McDonald, 148 Texas 277, 224 S.W. 2d 204; Connecticut Fire Ins. Co. v. Fields, 236 S.W. 790; Norwich Union Fire Ins. Soc. v. Dalton, 175 S.W. 459.

*Buck, Harris & Buck, Raymond E. Buck, Raymond E. Buck, Jr.,* and *Harry N. Harris,* all of Fort Worth, for respondent.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Pritchard & Abbott, a partnership composed of E. S. Pritchard and J. L. Abbott, brought suit against Houston Fire and Casualty Insurance Company to recover the sum of $10,000.00 expended by plaintiff in settlement of a personal injury claim growing out of a collision in which one of Plaintiffs' motor vehicles was involved. Houston Fire and Casualty denied liability on the ground that the policy of insurance made the basis of the suit was not in effect and brought Commercial Standard Insurance Company into the suit as a third-party defendant, alleging that Commercial Standard had issued a policy of insurance covering plaintiffs' vehicles which was in effect at the time of the collision. Houston Fire and Casualty prayed that the plaintiffs take nothing by their suit, and, in the alternative, that any judgment recovered by plaintiffs be prorated between it and Commercial Standard. Commercial Standard denied liability.

It was agreed by all parties that the settlement of the claim made by plaintiffs was reasonable. Trial was to the court without a jury, resulting in a judgment for the plaintiffs against Houston Fire and Casualty in the full amount sued for, and absolving Commercial Standard of all liability. The Court of Civil Appeals affirmed. 272 S.W. 2d 392.

The trial court filed extensive findings of fact, many of which

are contained in the opinion of the Court of Civil Appeals. During the course of this opinion we will emphasize only those facts about which there seems to be a controversy in this court, accepting, as established, those findings which are not challenged here.

Plaintiffs operated a fleet of automobiles in connection with their business. Prior to 1949 their vehicles were covered by a policy of insurance issued by Employers Casualty Company. In February, 1949, one McPhail, an insurance broker for Kenneth Murchison & Company of Dallas and a long-time friend of Ed S. Pritchard, solicited and secured plaintiffs' insurance business. Murchison & Company placed the insurance with Houston Fire and Casualty. The first policy, effective from March 8, 1949 to March 8, 1950, was duly issued to plaintiffs. In January, 1950, Pritchard told McPhail to secure a renewal of the policy then in force to take effect on the expiration of the current policy. On February 22, 1950, Murchison & Company issued the renewal policy, effective at 12:01 a.m., March 8, 1950, and mailed it to McPhail, who in turn sent it to plaintiffs in whose office it was received about March 1st. An employee of plaintiffs placed the policy in a desk drawer with unpaid bills and forgot about it. On March 9th the employee told Mr. Abbott they had no liability insurance, whereupon Abbott telephoned Pritchard, who was then in West Texas, and advised him they had no coverage. Pritchard, thinking McPhail had failed to secure a renewal policy, telephoned Waddell & Blank, insurance agents in Odessa, who, on behalf of Commercial Standard, issued a written binder on March 9th and mailed the same to plaintiffs' office. On March 9th, after issuance of the binder, plaintiffs' vehicle was involved in the collision that gave rise to the claim thereafter settled by plaintiffs for $10,000.00. On March 20, 1950, plaintiffs, having discovered the misplaced policy in the meantime, mailed their check for premium thereon to Houston Fire and Casualty. The check was returned. Plaintiffs tendered the premium in court and the same is on deposit in the registry of the court.

The first question to be decided is as to the liability of Houston Fire and Casualty Company. Its denial of liability rests primarily on its contention that by mailing the renewal policy it made an offer to insure which was not accepted by the plaintiffs, either directly or by overt acts, until after loss occurred. It admits that if the offer was made by plaintiffs it was accepted by the mailing of the renewal policy. It asserts, however, that there is neither evidence nor findings by the trial court that plaintiffs were the offerers.

■ As to the findings of the trial court, petitioner obviously is mistaken. Those findings, after reciting that Pritchard directed McPhail in January, 1950 to procure a renewal of the policy then in force, contain the following: "B. A. McPhail did order a renewal of the policy from Kenneth Murchison & Company, and on February 22, 1950, that partnership issued the renewal policy ordered by B. A. McPhail for plaintiffs * * * . In connection with this transaction of procuring the renewal policy for plaintiffs, B. A. McPhail was the agent of the plaintiffs, and not of the insurance company. * * * B. A. McPhail procured the renewal policy of Houston Fire and Casualty Company for the plaintiffs, pursuant to his instructions from Ed S. Pritchard." These findings add up to an offer by plaintiffs, through their agent McPhail, to purchase a policy of insurance in renewal of the policy expiring on March 8, 1950, and an acceptance of the offer by petitioner.

■ Petitioner emphasizes, however, that the findings recite that "McPhail accepted the renewal policy involved, for plaintiffs," and that the trial judge concluded that when McPhail received the policy and forwarded the same to his principals "he accepted the policy for them, and it became effective at the time of his acceptance, even though his principals didn't actually know it," and argues that these findings and conclusions are wholly at variance with the idea that an offer to purchase insurance was made by plaintiffs. The finding that McPhail "accepted" the policy on behalf of plaintiffs is not inconsistent with the finding that plaintiffs were offerers in the contractual transaction. Plaintiffs, through McPhail, offered to purchase renewal insurance. Petitioner accepted the offer and mailed the renewal policy. McPhail, on behalf of plaintiffs, accepted the policy. The finding of the trial court is not that McPhail accepted an offer by petitioner to sell insurance to plaintiffs, but rather that he accepted "the policy." This finding is consistent with the theory that, as plaintiffs' agent, McPhail offered to buy the same kind and type of insurance coverage then in force which offer was accepted by petitioner and its policy issued and mailed to McPhail who, having found its terms to be in keeping with the insurance ordered, "accepted the policy." The fact that the trial judge may have been in error in his conclusion that the policy became effective when accepted by McPhail, rather than when mailed by petitioner, would not alter his findings of fact.

■ While the testimony of McPhail concerning his request to Murchison & Company for a renewal policy is, in some respects, inconsistent with a prior written statement given by him, these

inconsistencies were matters to be urged on the trial judge as reasons for making contrary fact findings and on the Court of Civil Appeals for reversing because the trial court's findings, on this issue, were contrary to the great weight and preponderance of the evidence. We cannot say that the testimony is without probative value as supporting the trial court's findings. Since there is evidence to support the finding that plaintiffs made an offer to purchase a renewal policy, which offer was accepted by petitioner, it is immaterial that in the absence of such an offer petitioner would, nevertheless, have mailed plaintiffs a renewal policy in accordance with its custom.

■ The second question to be decided is as to the liability of Commercial Standard. The trial court found that the contract of insurance between plaintiff and Commercial Standard was entered into under a mistake of fact—the mistaken belief of the parties that plaintiff had no coverage. The Court of Civil Appeals approved that finding and there is evidence to support it. Ordinarily that finding alone would preclude a holding of liability against Commercial Standard. But petitioner contends by various points of error that the mere fact that the contract of insurance with Commercial Standard was entered into under a mistake of fact did not invalidate the contract; that it merely authorized Commercial Standard to rescind, which it did not elect to do as is evidenced by its issuance of its standard policy on March 16, 1950, dated back to 12:01 a.m. of March 9th, and its receipt and retention of the premium thereon with full knowledge of the collision and of the existence of petitioner's renewal policy. On the basis of these facts petitioner contends that Commercial Standard is liable to the plaintiffs on its policy and that, inasmuch as both policies for prorata liability if the vehicles were covered by other insurance, the courts below erred in not adjudging a prorata liability against Commercial Standard. Commercial Standard contends that petitioner waived its right to have the refusal of the trial court to prorate liability reviewed by failing to assign such refusal as error in its brief in the Court of Civil Appeals and by failing to include an assignment of error thereon in its motion for rehearing in the Court of Civil Appeals.

We have examined petitioner's brief in the Court of Civil Appeals and its motion for rehearing in that Court. Petitioner had in its brief no points specifically complaining of the refusal of the trial court to prorate the loss between the insurers but its Eighteenth and Twenty-third Points were as follows:

"Eighteenth Point: The error of the trial court in holding

that the policy of insurance issued by appellee Commercial Standard to appellee Pritchard and Abbott was not in full force and effect at the time of the loss in question and did not cover and insure against the same."

"Twenty-third Point: The trial court erred in concluding that Commercial Standard was 'not liable to anyone involved in this suit.' "

Under these points the argument was made that Commercial Standard's policy was in force and that judgment should have been rendered against petitioner and Commercial Standard for $5,000 each. Assignment of error number 18 in petitioner's motion for rehearing in the Court of Civil Appeals is to the effect that that Court erred in overruling its Eighteenth Point and its assignment number 23 is to the effect that the Court erred in overruling its Twenty-Third Point. While the points of error in the Court of Civil Appeals and the assignments in the motion for rehearing can hardly be said to "direct the attention of the court" to the error of the trial court in failing to prorate or divide the loss (Rule 418, Texas Rules of Civil Procedure), we are constrained to hold that the error, if any, has been sufficiently preserved as not to be waived. Fambrough v. Wagley, 140 Texas 577, 169 S.W. 2d 478.

There are findings of fact that Commercial Standard found out about the issuance of petitioner's renewal policy to plaintiffs within a day or two after the loss and promptly notified petitioner of the loss. The record discloses that petitioner denied that its policy was in effect and denied liability thereon. Thereafter, on March 16th, Commercial Standard issued its standard policy to the plaintiffs and received the premium therefor, and, on May 27th, wrote plaintiffs a letter agreeing to reimburse them for the amount paid in settlement of the claim if it was found that Houston Fire and Casualty's policy was not in effect. It is these facts upon which petitioner relies in asserting that Commercial Standard should be required to share the loss because it had elected to affirm rather than rescind its contract of coverage.

We do not think these facts evidence an unconditional election to affirm. Commercial Standard's agreement of insurance was made in the mistaken belief that plaintiffs had no other insurance. As soon as it found out about petitioner's renewal policy it was informed by petitioner that the policy was not in effect. Its conduct thereafter was strictly in accordance with its

agreement to provide plaintiffs with coverage if no other existed. It defended this suit on the ground that petitioner's policy was in effect at the time of the loss and that its contract with plaintiffs was not in effect because it was made under a mistake of fact. An action to rescind is not the only legal means of being relieved of the obligations of a contract made under a mistake of fact; relief may also be obtained by defending against an asserted liability on the contract. 10 Tex. Jur. 105, Contracts, Sec. 60. Before it may be held that Commercial Standard waived its right to rescind and ratified its contract of insurance it must appear that there was an intention to do so. Black on Rescission and Cancellation, Second Edition, Vol. 3, § 611, pp. 1475 and 1476; Prescott-Phoenix Oil & Gas Co. v. Gilliland Oil Co., Tex. Civ. App., 241 S.W. 775, 782. The record discloses that it was never the intention of Commercial Standard to provide the plaintiff with additional insurance, either before or after learning of petitioner's renewal policy; it was the intention of Commercial Standard to provide insurance coverage only if plaintiff had none. The courts below did not err in exonerating Commercial Standard of all liability.

The judgments of the trial court and the Court of Civil Appeals are affirmed.

Opinion delivered October 5 ,1955.

Rehearing overruled November 30, 1955.