DENNIS C. COOK AND JUANITA J. COOK *v.* MICHIGAN MUTUAL LIABILITY COMPANY, MERIDIAN MUTUAL INSURANCE COMPANY, BUCKEYE UNION INSURANCE COMPANY AND MARGARET V. DELEON

[No. 272A83. Filed December 5, 1972. Rehearing denied February 7, 1973. Transfer denied July 3, 1973.]

*Perry W. Cross, Dennis, Cross, Raisor, Jordan & Marshall,* of Muncie, *Phil M. McNagny, Jr., Gates, Gates & McNagny,* of Columbia City, for appellants.

*John H. Krueckeberg, Roland W. Gariepy, Parry, Krueckeberg and Duemling,* of Fort Wayne, for appellee, Buckeye Union Insurance Company. *Leonard E. Eilbacher, Hunt, Suedhoff, Borror & Eilbacher,* of Fort Wayne, for appellee Michigan Mutual Liability Company. *J. Michael O'Hara, Barrett, Barrett & McNagny,* of Fort Wayne, for appellees Meridian Mutual Insurance Company and Margaret V. DeLeon.

HOFFMAN, C.J.—Two issues are presented by this appeal. The first issue is whether, at the time of the automobile-motorcycle collision, appellee Margaret V. DeLeon had a valid contract of insurance with appellee Michigan Mutual Liability Company (Michigan Mutual). The second issue is whether, at the time of the collision, Mrs. DeLeon had a valid contract of insurance with appellee Buckeye Union Insurance Company (Buckeye).

The amended complaint herein was filed by Michigan Mutual seeking a declaratory judgment that it was not required to defend an action pending against Mrs. DeLeon arising from a collision on July 24, 1967, between an automobile driven by Mrs. DeLeon and a motorcycle driven by Dennis C. Cook. Pursuant to the stipulation of the parties the cause was submitted for trial to the court upon the deposition of Margaret

V. DeLeon, the deposition of Paul H. Kumming, the affidavit of Velma Wood; admissions contained in the answers filed by the defendants; and responses of the defendants to plaintiffs' request for admissions and interrogatories and answers thereto. The factual background pertinent to this appeal may be summarized from the above evidence as contained in the record before us as follows:

From June 15, 1966, through June 15, 1967, Mrs. DeLeon was insured by Michigan Mutual. Prior to the expiration of this policy, Mrs. DeLeon discussed insurance by Buckeye with Paul Hattendorf of the M. E. McRoss Agency.

After June 15, 1967, Mrs. DeLeon received two policies of insurance. One of these two policies was issued by Buckeye. The Buckeye policy incorrectly described the automobile owned by Mrs. DeLeon, and she returned the policy to the agency which was to correct it and send it back. The second policy was issued by Michigan Mutual.

While under the mistaken belief that there was a thirty day grace period of coverage under the previous Michigan Mutual policy, Mrs. DeLeon applied for insurance with Meridan Mutual Insurance Company. Such insurance became effective on July 15, 1967. Then, on July 24, 1967, the automobile-motorcycle collision occurred.

Based upon the evidence submitted by the parties, the trial court made special findings of fact and conclusions of law, and entered judgment in favor of plaintiff Michigan Mutual and defendant Buckeye. Defendants Dennis C. Cook and Juanita J. Cook thereafter filed their motion to correct errors. Such motion to correct errors was overruled by the trial court and this appeal followed.

On appeal, the scope of review to be applied by this court has been set forth in *Merryman* v. *Price* (1970), 147 Ind. App. 295, at 304, 259 N.E.2d 883, at 888, 22 Ind. Dec. 62, at 71 (transfer denied), (Cert. denied 404 U.S. 852), as follows:

"On appeal this court accepts the ultimate facts as stated by the trial court if there is evidence to sustain them. Car-

penter v. Wisniewski, [139 Ind. App. 325], 215 N.E.2d 882 (1966). All intendments are taken in favor of the findings. Jones v. Greiger (1960), 130 Ind. App. 526, 166 N.E.2d 868.

"Where the special findings of fact are not challenged by a motion for a new trial the appellant admits for purpose of appeal generally that the facts are correctly found. Where alleged error is presented in the conclusion of law this court may not consider the evidence but only the findings of fact. The special findings of fact are accepted as true. See Wiltrout, Indiana Practice, § 1664 and the cases cited therein."

The first issue is whether, at the time of the collision a valid contract of insurance existed between Margaret DeLeon and Michigan Mutual. The findings of fact made by the trial court pertinent to this issue are as follows:

"18. The defendant DeLeon did not accept the renewal policy issued by plaintiff and did not consider herself bound by its terms or obligated to pay any premium for said policy.

"19. The defendant DeLeon did not have the intention of being insured by the plaintiff as a result of its issuance of the renewal policy."

The general rule is that the delivery of a policy by the insurer to the insured upon the expiration of a policy without request by the insured is an offer which must be accepted by the insured before a contract of issuance is effective. 17 Couch 2d (1967), § 68:30, *et seq.,* at 677.

Such acceptance can be by acts, words or deeds of the insured which manifest an intent to accept. *Houston Fire & Casualty Ins. Co.* v. *Pritchard & Abbot* (Tex. Civ. App. 1954), 272 S.W.2d 392, (Affirmed 283 S.W.2d 728); 17 Couch 2d (1967), § 68:30, *et seq.,* at 677, *supra.* Under certain circumstances, mere retention of the policy by the insured could constitute a valid acceptance.

*Crowther* v. *Sullivan* (Tex. Civ. App. 1927), 290 S.W. 212; *Phelan* v. *Everlith* (1961), 22 Conn. Supp. 377, 173 A. 2d 601.

Any facts which show a meeting of the minds could support a finding that a contract was in effect. In the instant case, however, there is ample evidence in the record before us whereby the trial court could find that Mrs. DeLeon did not accept the policy and did not intend to be bound by it. The renewal policy recites the payment of a premium as consideration. When there is no intention to pay the required premium there is no valid insurance policy. *Farmers Insurance Exch.* v. *Allstate Insurance Co.* (E. D. Mich. 1956), 143 F. Supp. 213, 215. The evidence is clear that Mrs. DeLeon had no intention of paying the required premium. The findings of fact are supported by the evidence and the conclusion of law is consistent therewith. Therefore, the judgment should be affirmed as to Michigan Mutual Liability Company.

The issue with regard to Buckeye is whether, at the time of the collision, a binding contract of insurance existed between appellee Buckeye and appellee Margaret V. DeLeon.

The special findings of fact made by the trial court which are pertinent to Buckeye are as follows:

"6. Prior to June 15, 1967, the defendant Buckeye Union Insurance Company, issued a policy of automobile insurance to the defendant DeLeon which policy period was the same as that described in the renewal policy issued by plaintiff.

"7. The policy was issued by the Buckeye Union Insurance Company at the specific instance and request of the defendant DeLeon.

"8. The policy issued by Buckeye Union Insurance Company misdescribed the 1964 Chevrolet 4-door Sedan owned by the defendant DeLeon, which misdescription was through the mistake of the Buckeye Union Insurance Company and its agents.

"9. The Buckeye Union Insurance Company policy was returned to the agents of that company by the defendant

DeLeon for correction. However, no further policy was ever issued by the defendant Buckeye Union Insurance Company and no premiums paid by DeLeon to Buckeye Union Insurance Company."

Based upon these findings the trial court made the following conclusion of law which is pertinent to this issue:

"6. Buckeye Union Insurance Company is not obligated to defend the claims and legal actions brought against the defendant DeLeon as a result of the collision of July 24, 1967. Buckeye Union Insurance Company is not obligated to pay any damages, judgments, costs or expenses that may be assessed against the defendant DeLeon, as a result of the collision of July 24, 1967."

To create a contract of insurance there must be an offer and acceptance between the parties, that is, a meeting of the minds on the essential elements of the contract. *The Celina Mutual Casualty Co.* v. *Baldridge* (1937), 213 Ind. 198, 204, 10 N.E.2d 904; *Indiana Ins. Co.* v. *Knoll, et al.* (1968), 142 Ind. App. 506, 515, 236 N.E.2d 63, 14 Ind. Dec. 103.

In the instant case, the four findings of fact, when viewed as a whole, show only that a policy of automobile insurance was issued by Buckeye at the request of DeLeon, the insured. The policy incorrectly described the 1964 Chevrolet 4-door Sedan owned by Mrs. DeLeon who returned the policy to the company for correction. These findings lead inescapably to the conclusion that a valid contract of insurance existed between the parties.

In *Bushnell, Receiver* v. *Krafft, et al.* (1962), 133 Ind. App. 474, at 479, 183 N.E.2d 340, at 343, it is stated:

"As a general rule, once a valid contract of insurance has been effectuated, the right of either party to cancel it at pleasure can accrue in only three ways: by a concurrent agreement, by a reservation in the policy, by statute."

Here, there was no finding of cancellation under the terms of the policy or pursuant to statute. Therefore, the conclusion of the trial court may only be upheld if the findings of fact show a mutual or concurrent agreement to rescind the contract.

The concurrence of the parties in the rescission of the contract may be shown by their express agreement or their respective acts. *Gwynne* v. *Ramsey* (1883), 92 Ind. 414. Nonetheless, there can be no mutual agreement to rescind without a meeting of the minds thereon. 17A C.J.S., *Contracts*, § 389, at 464.

In *New Amsterdam Casualty Co.* v. *New Palestine Bank* (1915), 59 Ind. App. 69, 107 N.E. 554 (transfer denied), the agent of the insurance company misrepresented the names of the insured to the company. The policy was issued by the company, however, when it was received by the insured it was returned to the agent for the sole purpose of correction of the names of the insured. The agent forwarded the policy to the insurer for correction, but was thereafter notified that the company refused the business. The policy was retained by the company and marked cancelled. No other policy was issued, no demand for premium payment was made and no premium was tendered by the insured until after a subsequent loss when the tender was refused. The trial court entered judgment for the insured, and such judgment was affirmed on appeal. At 75-76 of 59 Ind. App., at 556 of 107 N.E., it was stated:

> "The policy was valid as written. Its return for correction was not an offer for cancellation, or a refusal to accept the contract. [Citing authorities].
>
> * * *
>
> "The policy was in force at the time it was returned for correction, and would remain in force until duly cancelled. No attempted cancellation would be effective until brought to the notice of appellee. We therefore must conclude that the policy was in force at the time of the loss."

In the instant case, the trial court found that Mrs. DeLeon returned the policy *for correction,* that no further policy had been issued at the time of the accident (approximately one week later), and that no premium had been paid by Mrs. DeLeon to Buckeye. These facts do not show a mutual agreement to rescind the contract. The facts as found by the trial court lead only to the conclusion that at the time of the accident a valid contract of insurance existed between the parties covering Margaret DeLeon's automobile.

It has been generally held that nothing can be added to a special finding of fact by presumption, inference or intendment. *Kerfoot* v. *Kessener* (1949), 227 Ind. 58, 75, 84 N.E.2d 190, and cases there cited. However, in *Bills* v. *Boettcher* (1946), 116 Ind. App. 631, at 642, 65 N.E.2d 495, at 499 (transfer denied), it was stated:

> "Furthermore, while it is generally true this court has no power to add to a special finding of facts, we may, where, as in this case, the evidence is before us, give heed to a fact appearing in the evidence which does not admit of dispute, in order to uphold the judgment."

In the instant case, were we to supplant the findings of the trial court by looking to the uncontroverted facts contained in the record before us, we would find that the only mutual agreement for rescission took place on the day after the accident when Mrs. DeLeon communicated to the agent of the insurer that she had other insurance coverage

For the foregoing reasons, the judgment of the trial court as to Michigan Mutual Liability Company is affirmed; and the judgment of the trial court as to Buckeye Mutual Insurance Company is reversed; and this cause is remanded to the trial court with instructions for further proceedings consistent with this opinion.

Sharp, J., concurs; Staton, J., concurs in part and dissents in part with opinion.

OPINION CONCURRING IN PART; DISSENTING IN PART

STATON, J.—I concur with the majority in affirming the trial court's judgment as to Michigan Mutual Liability Company. When this cause of action arose, IC 1971, 27-7-6-6; Ind. Ann. Stat. § 39-4318 (Burns 1971 Supp.) was not in effect. Therefore, the majority opinion of this court makes no determination of its effect upon the merits in this action. IC 1971, 27-7-6-6; Ind. Ann. Stat. § 39-4318 (Burns 1971 Supp.) provides:

> "Notice of intention not to renew.—No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least twenty [20] days' advance notice of its intention not to renew. In the event such policy was procured by an agent duly licensed by the state of Indiana notice of intent not to renew shall be mailed or delivered to such agent at least ten [10] days prior to such mailing or delivery to the named insured unless such notice of intent is or has been waived in writing by such agent.
>
> "This section shall not apply: (a) if the insurer has manifested its willingness to renew; nor (b) in case of nonpayment of premium: Provided, That, notwithstanding the failure of an insurer to comply with this section, the policy shall terminate on the effective date of any other insurance policy with respect to any automobile designated in both policies.
>
> "Renewal of a policy shall not constitute a waiver or estoppel with respect to grounds for cancellation which existed before the effective date of such renewal."

I dissent from the majority opinion where it reverses the judgment of the trial court as to Buckeye Union Insurance Company. The trial court's judgment should be affirmed as to Buckeye Union Insurance Company too for these reasons:

REASON ONE: *Answer mandatory under Rule TR. 7(A) (2) of the Indiana Rules of Procedure; otherwise admitted.* Buckeye Union Insurance Company joined Michigan Mutual Liability Company in its cross-claim. No answer was ever filed by either Mrs. DeLeon or the Cooks as required by Rule TR. 7(A) (2) of the Indiana Rules of Procedure. The filing of

an answer to the cross-claim is mandatory. *Commercial Credit Corp.* v. *Miller* (1972), 151 Ind. App. 580, 280 N.E.2d 856.

REASON TWO: *New Amsterdam Casualty Co.* v. *New Palestine Bank (1915), 59 Ind. App. 69, 107 N.E. 554 does not support the proposition for which the majority has cited it.* This was a fraud case employing the equitable theory of estoppel. Any similarity in fact or law to the present case begins and ends with the return of the policy for correction.

REASON THREE: *Manifest mutual rescission of the Buckeye Union insurance policy before Mrs. DeLeon purchased her second insurance policy at Meridian Mutual Insurance Company and before her accident is evident.* The majority opinion cites *Bills* v. *Boettcher* (1946), 116 Ind. App. 631, 65 N.E.2d 495, as supporting the following proposition:

"In the instant case were we to supplant the findings of the trial court by looking to the uncontroverted facts contained in the record before us, we would find that the only mutual agreement for rescisson took place on the day after the accident when DeLeon communicated to the agent of the insurer that she had other insurance coverage."

I suggest that ". . . were we to supplant the findings of the trial court by looking to the uncontroverted facts contained in the record before us, we would find . . ." mutual rescission a week before she purchased insurance with Meridian Mutual Insurance Company on July 17, 1967 and before the accident on July 24, 1967.

REASON FOUR: *All reasonable presumptions support the theory of rescission and sustain the trial court's judgment.* The trial court's judgment can easily be sustained upon the theory of mutual rescission. The trial court's judgment should be affirmed. To indulge the contrary is to act improvidently. This Court has recognized the general rule which has been set forth in *State ex rel. Tittle* v. *Covington Etc., Schools* (1951), 229 Ind. 208, 96 N.E.2d 334 and in *Ross* v. *Review Bd. of*

*Ind. Emp. Sec. Div.* (1962), 243 Ind. 61, 182 N.E.2d 585. In *Lewis* v. *Burke* (1968), 143 Ind. App. 696, 242 N.E.2d 382, this Court clearly stated in an opinion written by Judge Cooper that:

> "The general rule of law is well settled that on appeal all reasonable presumptions are indulged in favor of the rulings and judgment of the trial court. Generally speaking, if the action of the trial court is sustainable upon any theory, it must be affirmed. In support of this general rule, our Supreme Court in the case of *Ross, et al.,* v. *Review Board of Indiana Employment Security Division* (1962), 243 Ind. 61, 65, 182 N.E.2d 585, stated:
>
>> 'As long as there is any substantial ground upon which the decision of the lower tribunal may be sustained on appeal, the judgment will not be reversed. The reviewing court may examine the entire record to sustain the lower court's action. The court does not search the record to reverse, although it may do so in order to affirm. *State ex rel. Tittle* v. *Covington, etc., Schools* (1951), 229 Ind. 208, 96 N.E.2d 334; *City of Ft. Wayne* v. *Bishop* (1950), 228 Ind. 304, 92 N.E.2d 544; 2 I.L.E. *Appeals,* Sec. 461, p. 332, 333; F. W. & H. Ind. Tr. and App. Pract. 1961 Pocket Supp. Sec. 2783, p. 134.'
>
> "See also *Snauffer* v. *Peoples Trust and Savings Co.* (1965), 140 Ind. App. 491, 212 N.E.2d 165." *Lewis* v. *Burke, supra,* 143 Ind. App. at 697, 242 N.E.2d at 382.

Some expanding remarks are necessary to fully implement the reasons given above. This is especially true where reference has been made to inapplicable authority as in *Reason Two* and where reference has been made to the record in *Reason Three. Reason One* and *Reason Four* need none. They are quintessential.

REASON TWO: *New Amsterdam Casualty Co.* v. *New Palestine Bank, supra,* has no applicability to the question before this Court. The enforceability of the policy springs from the insurer's general agent's knowledge of the misrepresentations and the application of estoppel by the court. No question of rescission was ever considered nor do the facts lend themselves to such a consideration by inference.

A summary of the facts is as follows: The bank by one of its four partners submitted a policy which was presently in force to the general agent of the insurer. This policy contained all of the necessary information that the general agent needed. It listed the four partners of the bank and stated that the bank had no other burglary insurance. A policy was issued by the insurer without naming two of the four partners and without stating that the bank had no other burglary insurance. These omissions and facts to the contrary were known to the general agent. Later, the bank returned the policy to the general agent to insert the omitted items. The insurer decided to refuse the business and cancelled the policy. This cancellation was not communicated to the bank. The bank had a loss and made a claim. The Indiana Appellate Court held that "Since the misrepresentations were made by the agent of the appellant with knowledge of the truth, his knowledge estopped the company from claiming that the policy was void because of false warranties."

No question of rescission was presented to the court. Charles J. Richman, the inquiring partner of the bank, definitely stated that "He was ready to take out the burglary insurance." There were never any calls made by him to the insurer or the general agent stating that he ". . . was going to inquire of other companies . . ." as did Mrs. DeLeon. There was no ". . . teetering . . ." uncertainty or indecision on his part as to with whom he was insured. He did not purchase other insurance prior to the bank's loss which is an undeniable act of rescission. The *New Amsterdam Casualty Co.* case, *supra,* turns on the point of responsibility for omissions within the knowledge of the general agent and cancellation without notice under the term of the policy. It has nothing to do with rescission. It has no application to the question before this Court.

REASON THREE: The majority does not deny that a mutual rescission took place. Buckeye Union Insurance Company's liability is predicated upon the time when rescission

took place—the day after the accident on July 24, 1967. I disagree. I suggest that ". . . were we to supplant the findings of the trial court by looking to the uncontroverted facts contained in the record before us, we would find . . ." not a binding contract of insurance as did the majority, but a mutual rescission which took place before Mrs. DeLeon purchased her insurance policy at Meridian Mutual Insurance Company on July 17, 1967 and before the accident on July 24, 1967. The record strongly supports a reasonable inference that Mrs. DeLeon intended to rescind her policy with Buckeye and made declarations of intent to seek insurance coverage elsewhere. The following testimony by Mrs. DeLeon relates a communication which took place a week before she was insured with Meridian Mutual Insurance Company: (T. 110; L. 32: T. 111; L. 1-29)

"Q. Did I understand you to say that at the time, at the end of the thirty day grace period when you decided to contact the Isenbarger Agency that you called the Hattendorf Agency and told someone that you were going to be contacting the Isenbarger Agency?

"A. I didn't tell them who I was going to contact, I told them that I was going to inquire of other companies.

"Q. Did you tell them—

"A. At the time I told them that I wasn't sure where I was going to inquire.

"Q. That was before July 15, 1967?

"A. Yes.

"Q. And how did you communicate that to the Hattendorf Agency?

"A. By telephone.

"Q. Where did you do that?

"A. Why did I do that?

"Q. Why did you communicate to the Hattendorf Agency the fact that you were going to inquire of other companies?

"A. Because I was getting to the point where I was beginning to feel that I couldn't trust Paul, I mean I thought for awhile I could and then when he sent me this policy with all the wrong information on it I

began to think that he was just as negligent as he had been before, so I wanted to be fair to them and told them that I was still going to inquire from other companies.

"Q. You wanted them to know that you still might place your business elsewhere?

"A. Yes.

"Q. Did I ask you who you talked to on that occasion?

"A. I think it was Paul, but I can't say for certain."

Mrs. DeLeon further testified:

"A. That's right, I was just teetering, you might say.

"Q. And at the time that you went out to the Isenbarger Agency, were you in the same frame of mind with reference to your indecision as to which company you wanted to be insured with?

"A. Yes, I was still undecided, when you talked to them—that's when I called them.

"Q. I presume then that on July 15th of '67 you finally made up your mind that you wanted to be insured with Meridian Mutual?

"A. Well, I talked to them and found out what the benefits were and all and I decided for them."

 * * *

"Q. Did you ever intend during the thirty day period between June 15 and July 15 of 1967, to have coverage with more than one insurance company?

"A. No, be too expensive for me.

"Q. It was your understanding during that period that you had coverage with Michigan Mutual Liability Company?

"A. Yes."

These statements, when read in context with the entire record, do not support a conclusion that Mrs. DeLeon intended to be bound by the terms of the Buckeye Union policy on the date of the accident. To the contrary they lead to the conclusion that: After the Buckeye Union policy arrived with the wrong information, Mrs. DeLeon ". . . began to think that he [Buckeye's agent] was just as negligent as he had been

before, so . . . [she] still was going to inquire from other companies." And, prior to the date of the accident, she did purchase insurance elsewhere.

To rescind a contract there must be an intention by all contracting parties to terminate the contract. *Ralya* v. *Atkins & Co.* (1901), 157 Ind. 331, 61 N.E. 726; *Commercial Acceptance Co.* v. *Walton* (1931), 93 Ind. App. 136, 176 N.E. 244; *Dotson* v. *Bailey* (1881), 76 Ind. 434. The facts show that Buckeye Union Insurance Company never sent a new, corrected policy to Mrs. DeLeon after she informed them she still might place her insurance elsewhere. Nor did they ever bill her for premiums or communicate with her in any way after July 15, 1967. I believe that these facts support the conclusion of the trial court that there was no binding insurance contract between Mrs. DeLeon and Buckeye Union Insurance Company on the date of the accident.

> "(An) implied agreement to rescind may consist in an abandonment or repudiation of the contract by one of the parties assented to or acquiesced in by the other; . . . Conduct on the part of both the vendor and the purchaser which is inconsistent with the continuance of the contract . . . constitutes rescission by abandonment." *Brannock* v. *Fletcher* (1967), 271 N.C. 65, 155 S.E.2d 532, 542.

The conduct of the parties can hardly be said to be consistent with the continuation of the contract of insurance. The trial court's judgment should be affirmed as to both Michigan Mutual Liability Company and Buckeye Union Insurance Company.

NOTE.—Reported at 289 N.E.2d 754.