Mrs. Ziona BUSSEY et al., Appellants,

v.

TRINITY UNIVERSAL INSURANCE COMPANY, Appellee.

No. 16195.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 17, 1961.

Rehearing Denied March 17, 1961.

---

Thompson, Knight, Wright & Simmons, Timothy E. Kelley and David S. Kidder, Dallas, for appellants.

Strasburger, Price, Kelton, Miller & Martin, Eugene Jericho and Hobert Price, Dallas, for appellee.

MASSEY, Chief Justice.

This is an appeal from a summary judgment entered in behalf of the defendant in a suit filed by Mrs. Ziona Bussey and her subrogee/assignee against the Trinity Universal Insurance Company. Prior to the institution of such suit the same plaintiffs had procured a judgment aaginst R. A. Williams for damages growing out of an automobile collision which resulted in the death of the husband of Mrs. Bussey. It was the plaintiffs' contention that Williams had a policy of liability insurance with the company, which applied to the collision and the damages resulting therefrom, and that the amount of $5,000 provided therein, in the form of coverage, was money for which they were entitled to maintain their suit. It was the company's contention that Williams had no such policy of insurance and

that even if he did have it had a good and absolute defense to liability thereunder because of a delay in giving notice beyond the period contemplated in the policy provision that notice should be given "as soon as practicable".

Judgment affirmed.

The circumstances are these. For several years Williams had maintained motor vehicle liability insurance through the Joe E. Shelton Insurance Agency of Archer City, Texas. He purchased such a policy effective for one year beginning on December 31, 1954. The agent placed the insurance with the Trinity Universal Insurance Company. Such insurance was renewed by the agent with the same company, effective December 31, 1955, but on a Chevrolet sedan, Williams having traded vehicles prior to said effective date. This was renewed, with the same company effective December 31, 1956. It is of interest to note that in October or November of 1955 Williams traded the Chevrolet for a 1946 Ford sedan which he owned at all times subsequent thereto, but that the two insurance policies written by the agency continued to describe the vehicle insured as the Chevrolet. Nevertheless, Williams paid the premium on the policy effective December 31, 1955.

The insurance agency at all times had other companies besides the Trinity Universal Insurance Company "planted" therein, with which it could have placed the insurance made the subject of the contracts with Williams. The agency was local in character and not general. At about the time the Texas Legislature enacted the Texas Motor Vehicle Safety Responsibility Act, Vernon's Annotated Civil Statutes, Art. 6701h. Williams contacted the agency under the impression that the law required him to carry liability insurance on the automobile he owned at the time and he "just went in there and told them that I wanted the insurance on it, when I first got it." Subsequently, and without any arrangements made between the agency and Wil-

liams, renewals of the policy were written on or before the expiration dates and the premiums charged on the agency books against Williams. Presumably, all the policies were delivered and paid for, up to and including that policy effective on December 31, 1955.

A different situation obtained as to the policy which the agency wrote effective (on its face) on December 31, 1956. After such was prepared it was placed in a repository in the agency's office and never delivered to Williams or anyone for him. Neither was any bill therefor made or delivered to Williams. The agency simply treated it as a completed contract for its own bookkeeping purposes, paying the company the premium amount, less the agency's commission, but took no action to obtain any amount from Williams.

This was the situation on August 29, 1957, when the accident occurred which resulted in the death of Mr. Bussey. One of the vehicles involved in the collision was occupied by Bussey. The other vehicle involved contained Williams and one Bort, who was the owner of the car. At all material times Williams claimed that Bort was driving and Bort claimed that Williams was driving. To the time of the hearing of the company's summary judgment motion Williams continued to contend that it was Bort who was driving and that he was a passenger. The authorities in the county where the accident occurred evidently disagreed with Williams and agreed with Bort, for charges were lodged against Williams and he was tried and convicted and sent to the penitentiary on the premise that it was an automobile driven by him which was involved in the collision resulting in Bussey's death.

Prior to the time of the criminal trial, Williams was released from jail on bond. During this time the insurance adjuster for the company which carried liability insurance on Bort's automobile (a company other than the Trinity Universal Insurance Company) called at the office of the Shelton Insurance Agency. This was on or about October 17, 1957, about 49 days after the date of the fatal accident. Without any communication with Williams the agent wrote the company telling about the accident and filling in the company's form of automobile accident report. The company referred the matter to its adjuster, who called upon Williams on October 23, 1957, and secured from him an agreement in reservation of the company's rights and a statement in writing concerning material matters. Among these statements was Williams' assertion that he was not the driver of the Bort automobile at time of the accident. There were 55 days intervening between the time of the collision which resulted in Bussey's death and the date the company, through its adjuster, had the communication with Williams.

Subsequently, Mrs. Bussey and her subrogee/assignee brought suit against both Bort and Williams, and on July 6, 1959, secured a judgment in the amount of $18,266. The record before us is silent upon the question of whether Williams ever notified the Trinity Universal Insurance Company of the fact this suit was filed against him. The insurance company which carried the liability insurance on the Bort automobile paid the benefits stated on its face to Mrs. Bussey, and her subrogee/assignee, in the amount of $5,000, and the $18,266 judgment has been credited with the amount so paid.

Williams was arrested and charged with criminal offense the day after the accident in August of 1957. He knew, as of that time, that it was alleged in that matter that he was the driver of the Bort automobile at the time of the collision. It is not shown that Mrs. Bussey or anyone for her signed the complaint, or that she or anyone by or through her ever claimed that Williams was the driver of the Bort automobile prior to the date citation was served in her suit for civil damages. The date such civil suit was filed and the date such citation was served upon Williams is not shown in the record, just as the matter of whether Wil-

liams did or did not perform the duties requisite under the provisions of the policy (assuming for the sake of the question that it was a valid policy which was in force) upon knowledge coming to his notice that Mrs. Bussey or anyone through or under her was claiming that he was the person liable because of the wrongful death of her husband. All this is important because it is claimed that the policy of insurance which is in question in the case provided liability protection to Williams when he was driving an automobile other than that owned by him to the same extent and amount as would be applicable were he driving the vehicle described in the policy.

Unfortunately the policy in question was never introduced in evidence upon the hearing of the summary judgment motion and it is not made a part of the pleadings of the case. Therefore, we must necessarily draw upon the knowledge that the provisions of the Texas Standard Form of policy prescribed by the Insurance Commission were applicable to control any policy claimed to have been in effect and affording liability coverage. The matter is so involved that the author of this opinion may from time to time, by reason thereof, stray beyond the confines circumscribing the necessity for decision as limited by the state of the record presented to us.

We know of one case where the facts had a certain analogy. It was held that where an insured believed that he had *not* been involved in a collision and therefore made no report thereof to the company until one year and three months subsequent to the time thereof when he was served with citation in a complaint where the party claiming to have been injured or damaged by reason of the alleged collision charged the insured with guilt. In such case the court held that the insurance company was bound under the policy of insurance. Ohio Casualty Ins. Co. v. Marr, 10, Cir., 1938, 98 F.2d 973, certiorari denied, 305 U.S. 652, 59 S.Ct. 245, 83 L.Ed. 422. It was noted in the opinion that the company neither asserted in its pleadings that an accident actually took place, nor made any effort to prove that fact. Instead, it attempted to prove that the insured's automobile did not strike or injure the deceased. The court said that the company's contention was therefore precisely the contention of its own insured, i. e., that there was no accident such as was contemplated by the policy. The court said that if there was an absence of such an accident there could not be a breach of the policy for failure to give notice, and that unless there was an accident there could be no basis for the contention of the company that it was free of liability for failure to give such notice. Inferentially, it is stated that it would be necessary for the company to establish that such an accident as was insured against under the policy actually occurred, involving the person insured, and with his knowledge thereof existent, if it would show that there was dereliction of duty in respect to giving prompt notice thereof to the company antecedent to the time suit was filed and citation served upon him.

Another case of analogy, in which it was held that notice was timely and sufficient, although given only after the insured was served with citation, is Chinn v. Butchers' Mut. Casualty Co. of New York, City Ct. 1947, 71 N.Y.S.2d 70. See also 8 Appleman, Insurance Law and Practice, p. 104, "Duties of Insured—Notice of Accident, Claim, or Suit", sec. 4733, "Accidents and Claims Covered".

It is contended by the company that Williams was acquainted with the fact that he was charged with having been the driver of the Bort automobile from the time when he was placed under arrest and charged on the day following that on which the accident occurred. Based upon such, the company contends that the time interval between that day and the one on which the company's adjuster called on Williams and took his statement would in any event be the time to be counted in connection with resolution of the question of whether there was an unreasonable delay in giving notice. We are not in agreement with the

contention. As heretofore mentioned, we do not know that someone who was entitled to claim civil damages of Williams as the result of the accident ever brought home the fact that he or she was claiming that he was the driver of the Bort automobile. The record being silent concerning the matter of whether the company denied liability prior to the time it was served with citation and answered the instant suit with a denial, and also silent upon the question of whether Williams forwarded to the company the citation served upon him in the suit for damages, we are satisfied that the state of the record is not such as would warrant the entry of a summary judgment on the ground advanced.

We are in accord, however, with the action of the trial court in entering summary judgment for the company on the ground that there was no policy of insurance in force and effect at time of the accident.

Unless there was a contract between Williams and the company there was no insurance policy in effect. Williams did not think he had such a contract. He did not know any policy had been issued. Had he been tendered that which the agent had written out but never released out of possession, there is extreme doubt that it would have been accepted, for the automobile described therein was not that which was owned, it having been disposed of by Williams prior to the date stated on the policy as that on which it was effective. As a general rule, the delivery of a policy by the insurer to the insured upon the expiration of a policy, without request by the insured, is an offer or proposal which must be accepted by the insured before a contract of insurance is effected. Of course, the offer or proposal may be made either by the insured or by the company. Houston Fire & Casualty Insurance Company. v. Pritchard & Abbott, 1954, Tex.Civ.App., Fort Worth, 272 S.W.2d 392, affirmed at 155 Tex. 120, 283 S.W.2d 728. A promise under seal is delivered unconditionally when the promisor puts it out of his possession with the apparent intent to create immediately a contract under seal, unless the promisee then knows that the promisor has not such actual intent. So, if A signs and seals a written promise to B and deposits the document in the drawer of his own desk, saying to B and to a third person as he does so, that he intends the promise to be immediately binding, there has been no delivery and there is no contract. Restatement of the Law, "Contracts", sec. 102, "What Amounts to Unconditional Delivery". This paraphrases what occurred in the present instance, except that the promisee was never informed to any effect.

That there was absence of contract under the circumstances here presented in view of a want of the requisite of mutuality is like unto the circumstances presented in the case of Trinity Universal Ins. Co. v. Rogers, Tex.Civ.App., Dallas, 1948, 215 S.W.2d 349. In that case, the agency which had written Rogers' insurance wrote a renewal policy upon the expiration of a former policy. Rogers had not ordered the policy renewed, did not know it had been renewed, and had not accepted the renewed policy at the time he was involved in an accident. After the accident occurred Rogers' wife called the agency, which advised that the policy was in full force and effect but that her husband had not paid the premium. The author of the court's opinion wrote rather exhaustively upon the matter of why there was no policy in effect at time of Rogers' accident because of the absence of that mutuality requisite to the formation of a valid contract of insurance, citing many authorities dealing with the question and including a synopsis of the legal holdings therein.

Mrs. Bussey et al. suggest that the circumstances of the renewal of the insurance for Williams in years prior to that purported period of coverage during which the fatal accident occurred, with the agent extending credit for the premiums and an agreement to keep certain insurance in force, amounted to the establishment of a custom and practice under which the com-

pany should be bound. Language tending to support the theory is cited from cases of other states. In the case of Trinity Universal Insurance Company v. Rogers, supra, one of the matters pointed out is that if the party named as an "insured" in a policy which was not delivered or was not accepted should be sued by the insurance company in an action to collect the premium therefor, he could not be held liable because of his inactivity and the fact that he had previously purchased and paid for the policy as to which the one sued upon was in renewal. The circumstances of the instant case not creating a condition wherein Williams could be said to have become legally bound to pay the premium, it follows that there was no contract and therefore no valid policy of insurance. If the Trinity Universal Insurance Company had no contract with Williams which obligated it to protect him by defending him or to pay any damages which he might become legally obligated to pay, it could have no liability to him. Having no liability to him it could have none to Mrs. Bussey or her subrogee/assignee.

Judgment affirmed.