# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00796-CV

**Diane Crumley Dee, Appellant**

**v.**

**Crosswater Yacht Club, LP, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-10-003781, HONORABLE JEFF L. ROSE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Diane Crumley Dee appeals from a summary judgment denying her claim that a piece of lakefront property located on Graveyard Point, a peninsula on Lake Travis, and currently owned by appellee Crosswater Yacht Club, LP ("Crosswater") is burdened by a restrictive covenant prohibiting commercial activity. We will affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The land constituting Graveyard Point was part of the Stewart Ranch owned by A.K. and Annie Stewart. Beginning in the 1940s, the Stewarts—and after A.K. Stewart's death, Annie Stewart individually and as executrix of his estate—partitioned a number of tracts from their property and conveyed them to third parties by deeds that contained metes and bounds descriptions.[1]

---

[1] The affidavit of David Jones, a title examiner, which was part of Dee's summary judgment evidence, indicates that between 1943 and 1952 A.K. and Annie Stewart, or Annie Stewart

These tracts are predominantly landlocked lots located within an area bounded by a roadway (Chipmonk Road) that roughly follows the 715' contour line of Lake Travis,[2] but also include two tracts across Chipmonk Road closer to the 670' contour line, i.e., on the lake side of Chipmonk Road. The deeds conveying each of these tracts, with the exception of one of the landlocked tracts, included a restrictive covenant prohibiting use of the conveyed tract for a commercial enterprise.[3] The instruments conveying 16 of the tracts, including the tract of land now owned by Dee, also granted an express easement over the property lying between the particular tract and the 670' contour line of Lake Travis for the purpose of ingress and egress to the lake. Dee's property is one of the tracts on the lake side of Chipmonk Road and is bordered on the south, west, and north by the Crosswater Tract.

In addition to the tracts described above, Annie Stewart also conveyed several pieces of property to each of her seven children. These included six adjacent landlocked tracts that were bounded by Chipmonk Road and seven larger adjacent lakefront tracts that were located on the northernmost portion of the peninsula.[4] The deeds conveying these properties did not contain a restrictive covenant prohibiting commercial use.

---

individually and as executrix of A.K. Stewart's estate, conveyed 40 such tracts.

[2] In 1940 A.K. and Annie Stewart granted the Lower Colorado River Authority an easement to inundate their property up to the 715' contour line of Lake Travis.

[3] Typically, the deeds included the following language: "It is agreed and understood that no commercial enterprise shall ever be operated upon said land herein conveyed."

[4] The landlocked tracts ranged in size from 0.35 to 0.77 acres, whereas the lakefront lots ranged in size from 1.65 to 2.97 acres.

Crosswater purchased its property on Graveyard Point in November 2007. Approximately 40 of the 111 acres Crosswater obtained were originally part of the Stewart Ranch. Crosswater purchased the 111 acres from Dorothy Jean Stewart Uzell and Betty Ann Stewart Hanson, who had inherited the property from Arthur L. Stewart, one of Annie Stewart's sons. The deed conveying the Crosswater Tract contained no restrictions on its use. Crosswater purchased the land with the intention of building and operating a marina. Disputes arose between Crosswater and Dee regarding the scope of Dee's easement rights over portions of the Crosswater Tract. In February 2009, Crosswater brought suit seeking to enjoin Dee from interfering with its construction of the marina and to declare the scope of the easement rights. Dee answered and asserted, among other things, a counterclaim seeking a declaration that the Crosswater Tract was, by application of the implied reciprocal negative easement doctrine, burdened by a restrictive covenant prohibiting commercial use. Crosswater filed a traditional and no-evidence motion for summary judgment on Dee's claim regarding the commercial-use restriction. The trial court granted the motion for summary judgment and signed an order dismissing that claim with prejudice. Thereafter, the trial court severed the implied-reciprocal-negative-easement claim into a new action with a new cause number, thereby making its earlier order a final judgment. This appeal followed.

**STANDARD OF REVIEW**

We review the trial court's summary-judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Where, as here, the summary-judgment motion asserted multiple grounds and the summary-judgment order did not specify a ground for the ruling, we will affirm the

3

summary judgment if any ground presented is meritorious. *See Pickett v. Texas Mut. Ins. Co.*, 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no pet.).

When, as here, a party moves for summary judgment under both rule 166a(c) and rule 166a(i), we first review the trial court's summary judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). Under rule 166a(i), a movant must assert that, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *see Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). To defeat a rule 166a(i) summary-judgment motion, the nonmovant must produce summary-judgment evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i); *Ford Motor Co.*, 135 S.W.3d at 600. A genuine issue of material fact exists if the nonmovant produces more than a scintilla of evidence establishing the existence of the challenged element. *Ford Motor Co.*, 135 S.W.3d at 600. More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). Evidence that is so slight as to make any inference a guess is in legal effect no evidence. *Ford Motor Co.*, 135 S.W.3d at 601. If the nonmovant fails to produce more than a scintilla of evidence under that burden, there is no need to analyze whether the movant's proof satisfied the rule 166a(c) burden. *Id.* at 600.

4

In her first issue, Dee contends that the trial court erred in granting the no-evidence motion for summary judgment because there are fact issues regarding whether the implied reciprocal negative easement doctrine applies and imposes on the Crosswater Tract a restrictive covenant against commercial use. In order to defeat Crosswater's no-evidence motion for summary judgment, Dee was required to produce evidence raising a fact issue with respect to each of the challenged elements of her implied-reciprocal-negative-easement claim.

The supreme court has adopted the following as a "reasonably accurate general statement" of the implied reciprocal negative easement doctrine:

> [W]here a common grantor develops a tract of land for sale in lots and pursues a course of conduct which indicates that he intends to inaugurate a general scheme or plan of development for the benefit of himself and the purchasers of the various lots, and by numerous conveyances inserts in the deeds substantially uniform restrictions, conditions and covenants against the use of the property, the grantees acquire by implication an equitable right, variously referred to as an implied reciprocal negative easement or an equitable servitude, to enforce similar restrictions against that part of the tract retained by the grantor or subsequently sold without the restrictions to a purchaser with actual or constructive notice of the restrictions and covenants.

*Evans v. Pollock*, 765 S.W.2d 465, 466 (Tex. 1990) (quoting *Minner v. City of Lynchburg*, 129 S.W.2d 673, 679 (Va. 1963)) (citations omitted). In order to impose a restrictive covenant by implication on property retained by the original grantor, there must be evidence that (1) the grantor intended to adopt a scheme or plan of development that encompassed *both* the property conveyed *and* the property retained; and (2) the grantor subdivided the property into lots and included in the deeds of the properties conveyed substantially uniform restrictions designed to further such scheme

5

or plan. *Id.* Under these circumstances, the burden the grantor has placed on the land conveyed is, by operation of law, reciprocally placed on the land he retained. *Saccomanno v. Farb*, 492 S.W.2d 709, 713 (Tex. Civ. App.—Waco 1973, writ ref'd n.r.e.) (citing 20 Am. Jur. 2d *Covenants, Conditions and Restrictions* § 733 (1965)). When seeking to impose the restrictive covenant on property later sold by the grantor without restrictions, there must also be evidence that the purchaser had actual or constructive notice of the existence of the restrictions on the other properties included in the scheme or plan of development. *See Evans*, 792 S.W.2d at 466 (lots sold by owner from development without express restrictions to grantee *with notice* of restrictions in other deeds are burdened with implied reciprocal negative easement and may not be used in violation of restrictive covenants burdening lots sold with express easements). The *Saccomanno* court observed that "the doctrine should be used and applied with extreme caution, for it 'involves difficulty' and lodges discretionary power in a court of equity to deprive a man of his property, to a degree, by imposing a servitude by implication." *Id.* at 713. This practice is consistent with "the settled rule in Texas that alleged restrictive clauses in instruments concerning real estate must be construed strictly, and all doubts . . . resolved in favor of the free and unrestricted use of the property." *Id.* (citing *Baker v. Henderson*, 153 S.W.2d 465, 470 (Tex. 1941), and *Southampton Civic Club v. Couch*, 322 S.W.2d 516, 518 (Tex. 1959)).

In its no-evidence motion for summary judgment, Crosswater asserted that there was no evidence (1) that the original grantors, A.K. Stewart and Annie Stewart (and after his death Annie Stewart individually and as executrix of his estate), intended to "inaugurate a general scheme or plan of development" that encompassed both the Crosswater Tract and the tracts they partitioned and

6

conveyed, and (2) that they intended to prohibit the property from being used for commercial enterprise. Dee was therefore required to produce evidence creating a fact issue, i.e., more than a scintilla of evidence, as to whether the grantors did in fact intend a general scheme of development that encompassed both the property sold later—the Crosswater Tract—and the tracts they partitioned and conveyed and contemplated that none of that property would be used for commercial enterprise.

Dee's summary-judgment evidence in this regard consisted of the affidavit of David Jones, a title examiner, who averred as follows:

> All but one conveyance by Annie Stewart during her lifetime, other than conveyances to her children, contained a restriction prohibiting commercial uses of the property. In addition, in conveying several of the tracts in the northwest part and southeast part of Graveyard Point, A.K. and Annie Stewart granted broad easement rights across land lying to the north of the tracts conveyed in the north western part of Graveyard Point and to the east of the tracts conveyed in the south eastern part. As a title examiner the scope of the easement rights in those deeds [] across the servient estate are significant because they significantly limit the uses to which the servient estate may be put.[5]

The Jones affidavit also referenced three other trial-court judgments in cases addressing similar issues with respect to other pieces of property located on Graveyard Point.

---

[5] Jones also averred that

> [a]s a title examiner, the terms of the conveyances by A.K. Stewart and Annie Stewart in Exhibits 1 through 53, taken as a whole, reflect an intended general scheme or plan of development by A.K. Stewart and Annie Stewart that would prohibit [the Crosswater Tract] from being used for the operation of a commercial or business enterprise.

The trial court sustained Crosswater's objection to this paragraph of the affidavit, and Dee does not challenge this ruling on appeal.

7

Dee's summary-judgment evidence does not create a fact issue with respect to whether the original grantors intended to inaugurate a general scheme or plan of development that included both the Crosswater Tract and the property they partitioned and conveyed and that restricted the commercial use of that property. The fact that the original grantor inserts substantially similar restrictions in deeds of property conveyed, standing alone, is not evidence of a scheme or plan of development that can justify imposing a similar restriction on property the grantor retained. *See Saccomanno*, 492 S.W.2d at 713 ("[T]he fact that in the deed of conveyance a grantor imposes restrictions on a part of a tract which he sells and declares that the restrictions are to run with the land does not, by itself, raise any legal or factual presumption that he means thereby to so restrict the retained portion of the tract."); *Cambridge Shores Homeowners Ass'n v. Spring Valley Lodge Co.*, 422 S.W.2d 10, 13 (Tex. Civ. App.—Dallas 1967, no writ) (mere fact that deeds contain identical restrictions is not alone sufficient to establish existence of general scheme); *see also* 144 A.L.R. 916 (1943) ("[T]he mere fact that a grantor imposes restrictions upon a lot conveyed raises no inferences or implication that the remainder of his property not covered by the conveyances will be similarly restricted."); 20 Am. Jur. 2d *Covenants, Conditions and Restrictions* § 168 (1965) (mere fact that grantor imposes restrictions on part of land he is selling does not necessarily lead to conclusion that he intended thereby to have restrictions apply to his remaining land). Although all but one of the deeds for the smaller, landlocked lots conveyed to nonfamily members included restrictions on commercial use, an intent to restrict the land retained by the grantor may not be inferred unless there is additional evidence that the grantor intended, as part of a general scheme or plan of development, to restrict not merely the property sold but also a larger area that included the property retained. *See*

8

*Cambridge Shores*, 422 S.W.2d at 13; *see also Green v. Gerner*, 289 S.W. 999 (Tex. Comm'n App. 1927, judgm't adopted) ("Such fact construed in the light of the surrounding circumstances may or may not be sufficient to support a finding of a general scheme."). In the present case, the surrounding circumstances do not support an inference that Annie Stewart intended a general plan or scheme of development for the entire Stewart Ranch, including the Crosswater Tract, that prohibited commercial use. To the contrary, the surrounding circumstances, especially the conveyances of large tracts of lakefront property *without* restrictions, suggest that she intended that the lakefront properties were to be treated differently, i.e., that they could be used for commercial enterprises.

Thus, even if it could be inferred that A.K. Stewart and Annie Stewart did have a general plan or scheme of noncommercial development, the summary-judgment evidence implies that any such plan encompassed only the *landlocked* properties bounded by Chipmonk Road and did not include *lakefront* tracts such as the Crosswater Tract. The landlocked properties lie above the 715' contour line of Lake Travis, a line that roughly follows Chipmonk Road. The properties below that line are subject to an inundation easement the Stewarts granted the Lower Colorado River Authority in 1940. We think it unlikely that A.K. and Annie Stewart would have intended to include, as part of a development restricted to residential only, property that was subject to an inundation easement. Such properties would appear to be better suited to uses that can accommodate fluctuating water levels and occasional inundation—uses such as marinas and waterfront campgrounds or other businesses that operate from floating docks.

The evidence that 16 of the landlocked tracts were conveyed with easements over land lying between them and the 670' contour line of Lake Travis does not serve to create a fact issue with regard to a scheme of noncommercial development for the tracts across which the easements are granted. Although Jones averred that the language of the easements confers "broad easement rights" that "significantly limit the uses to which the servient estate may be put," these legal conclusions do not constitute competent summary-judgment evidence. *See* Tex. R. Civ. P. 166a(f) (supporting affidavits shall set forth facts as would be admissible in evidence). Jones's statements of his subjective belief about the scope of the easements are no more than legal conclusions and do not create a fact issue. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (holding that statement in affidavit that "his contractual obligation had been modified" was nothing more than legal conclusion). We note that the scope of Dee's easement is one of the issues in dispute between Dee and Crosswater in the underlying cause from which the present claim was severed. We further note that this Court has construed the scope of two of the easements referenced in Jones's affidavit to grant much more limited rights than would be granted under Jones's interpretation—rights that should not significantly limit the uses of the servient estates. *See Harbor Ventures, Inc. v. Dalton*, No. 03-10-00690-CV, 2012 WL 1810205, at \*9 (Tex. App.—Austin May 18, 2012, no pet. h.) (mem. op.).

Dee also attached as summary-judgment evidence the decisions of other trial courts that have considered whether different pieces of property on Graveyard Point are subject to restrictive covenants prohibiting commercial use through application of the doctrine of implied reciprocal negative easement. As an initial matter, we note that the decisions of other trial courts are

10

not legally binding precedent on the trial court in this matter, nor on this Court. *See Schook v. State*, 344 S.W.2d 220, 221 (Tex. Crim. App. 1951). Moreover, findings in cases to which neither Crosswater nor Dee was a party are not binding under either the doctrine of res judicata or collateral estoppel. *See Cisco Food Servs. Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1995); *W. S. Willy v. McCain*, 374 S.W.2d 871, 874 (Tex. 1964). The findings, conclusions, and judgments of other trial courts relating to different property and involving different parties, facts, and arguments are irrelevant and do not serve to create a fact issue with respect to the elements of Dee's claim in the present case.

Because Dee failed to produce more than a scintilla of evidence of a general scheme or plan of development of noncommercial use that included the Crosswater Tract, the trial court properly granted Crosswater's no-evidence motion for summary judgment on her claim that a commercial-use restriction should be imposed on the Crosswater Tract through application of the implied reciprocal negative easement doctrine. We overrule Dee's first appellate issue.

In her second issue, Dee appears to contend that the trial court improperly refused to grant her cross-motion for summary judgment that restrictions on the Crosswater Tract restrict its commercial use. The record does not include such a cross-motion for summary judgment. The second appellate issue is overruled.

In her third issue, Dee contends that the summary judgment violated her constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution because (1) the trial court did not enter findings of fact or conclusions of law; (2) the hearing on the motion for summary judgment was not transcribed; and (3) her "right to object" was taken away. First,

11

Dee has no right, constitutional or otherwise, to findings of fact and conclusions of law in a summary-judgment proceeding. *See Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994) (findings of fact and conclusions of law have no place in summary-judgment proceeding); *see also IKB Indus. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997) (if summary judgment is proper, there are no facts to find and legal conclusions have already been stated in motion and response; therefore "[t]he trial court should not make, and an appellate court cannot consider, findings of fact in connection with a summary judgment"). Likewise, Dee has no right, constitutional or otherwise, to a record of the non-evidentiary summary-judgment hearing. Moreover, Dee's counsel could have, but apparently did not, request that the hearing be transcribed. Finally, Dee does not explain how her "right to object" was taken away. Dee filed a response to the motion for summary judgment and objections to Crosswater's summary-judgment evidence, some of which were sustained. She filed a post-judgment motion for new trial and request for findings of fact and conclusions of law. Dee does not identify, and we are unable to discern, any manner in which her right to object, either to the evidence submitted or arguments made by Crosswater or to the trial court's rulings, was taken away. Dee also asserts in her third appellate issue that the trial court was not impartial based on comments she claims were made during the hearing on the motion for summary judgment. Because there is no reporter's record, any such comments are not part of the appellate record. Accordingly, no error or abuse of discretion is shown. *See Enterprise Leasing of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) (per curiam) (appellant bears burden to bring forward appellate record that enables appellate court to determine whether appellant's complaints constitute reversible error); *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (burden is on appellant to present sufficient record

12

to show error requiring reversal).  Similarly, her contention that the trial court was biased due to social associations with counsel for Crosswater is unsupported by any evidence in the record.  We overrule Dee's third appellate issue.

## CONCLUSION

Having overruled Dee's three appellate issues, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   May 18, 2012

13