TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00796-CV






Diane Crumley Dee, Appellant


v.


Crosswater Yacht Club, LP, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. D-1-GN-10-003781, HONORABLE JEFF L. ROSE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Diane Crumley Dee appeals from a summary judgment denying her claim that a piece
of lakefront property located on Graveyard Point, a peninsula on Lake Travis, and currently owned
by appellee Crosswater Yacht Club, LP ("Crosswater") is burdened by a restrictive covenant
prohibiting commercial activity. We will affirm the trial court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 The land constituting Graveyard Point was part of the Stewart Ranch owned by A.K.
and Annie Stewart. Beginning in the 1940s, the Stewarts--and after A.K. Stewart's death, Annie
Stewart individually and as executrix of his estate--partitioned a number of tracts from their
property and conveyed them to third parties by deeds that contained metes and bounds descriptions. (1) 
These tracts are predominantly landlocked lots located within an area bounded by a roadway
(Chipmonk Road) that roughly follows the 715' contour line of Lake Travis, (2) but also include two
tracts across Chipmonk Road closer to the 670' contour line, i.e., on the lake side of Chipmonk Road. 
The deeds conveying each of these tracts, with the exception of one of the landlocked tracts, included
a restrictive covenant prohibiting use of the conveyed tract for a commercial enterprise. (3) The
instruments conveying 16 of the tracts, including the tract of land now owned by Dee, also granted
an express easement over the property lying between the particular tract and the 670' contour line
of Lake Travis for the purpose of ingress and egress to the lake. Dee's property is one of the tracts
on the lake side of Chipmonk Road and is bordered on the south, west, and north by the
Crosswater Tract.

 In addition to the tracts described above, Annie Stewart also conveyed several pieces
of property to each of her seven children. These included six adjacent landlocked tracts that were
bounded by Chipmonk Road and seven larger adjacent lakefront tracts that were located on the
northernmost portion of the peninsula. (4) The deeds conveying these properties did not contain a
restrictive covenant prohibiting commercial use.

 Crosswater purchased its property on Graveyard Point in November 2007. 
Approximately 40 of the 111 acres Crosswater obtained were originally part of the Stewart Ranch. 
Crosswater purchased the 111 acres from Dorothy Jean Stewart Uzell and Betty Ann Stewart
Hanson, who had inherited the property from Arthur L. Stewart, one of Annie Stewart's sons. The
deed conveying the Crosswater Tract contained no restrictions on its use. Crosswater purchased the
land with the intention of building and operating a marina. Disputes arose between Crosswater
and Dee regarding the scope of Dee's easement rights over portions of the Crosswater Tract. In
February 2009, Crosswater brought suit seeking to enjoin Dee from interfering with its construction
of the marina and to declare the scope of the easement rights. Dee answered and asserted, among
other things, a counterclaim seeking a declaration that the Crosswater Tract was, by application of
the implied reciprocal negative easement doctrine, burdened by a restrictive covenant prohibiting
commercial use. Crosswater filed a traditional and no-evidence motion for summary judgment on
Dee's claim regarding the commercial-use restriction. The trial court granted the motion for
summary judgment and signed an order dismissing that claim with prejudice. Thereafter, the trial
court severed the implied-reciprocal-negative-easement claim into a new action with a new cause
number, thereby making its earlier order a final judgment. This appeal followed.


STANDARD OF REVIEW

 We review the trial court's summary-judgment rulings de novo. Valence Operating
Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident Ins. Co v. Knott,
128 S.W.3d 211, 215 (Tex. 2003). Where, as here, the summary-judgment motion asserted multiple
grounds and the summary-judgment order did not specify a ground for the ruling, we will affirm the
summary judgment if any ground presented is meritorious. See Pickett v. Texas Mut. Ins. Co.,
239 S.W.3d 826, 840 (Tex. App.--Austin 2007, no pet.).

 When, as here, a party moves for summary judgment under both rule 166a(c) and rule
166a(i), we first review the trial court's summary judgment under the standards of rule 166a(i). Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004). Under rule 166a(i), a movant must assert
that, after adequate time for discovery, there is no evidence of one or more essential elements of a
claim or defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P.
166a(i); see Fort Worth Osteopathic Hosp., Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004). To defeat
a rule 166a(i) summary-judgment motion, the nonmovant must produce summary-judgment evidence
raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i); Ford Motor Co., 135 S.W.3d at 600. 
A genuine issue of material fact exists if the nonmovant produces more than a scintilla of evidence
establishing the existence of the challenged element. Ford Motor Co., 135 S.W.3d at 600. More
than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to
differ in their conclusions. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); see also
Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007). "Less than a scintilla of
evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or
suspicion' of a fact." King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 750-51 (Tex. 2003) (quoting
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). Evidence that is so slight as to make
any inference a guess is in legal effect no evidence. Ford Motor Co., 135 S.W.3d at 601. If the
nonmovant fails to produce more than a scintilla of evidence under that burden, there is no need to
analyze whether the movant's proof satisfied the rule 166a(c) burden. Id. at 600.

DISCUSSION

 In her first issue, Dee contends that the trial court erred in granting the no-evidence
motion for summary judgment because there are fact issues regarding whether the implied reciprocal
negative easement doctrine applies and imposes on the Crosswater Tract a restrictive covenant
against commercial use. In order to defeat Crosswater's no-evidence motion for summary judgment,
Dee was required to produce evidence raising a fact issue with respect to each of the challenged
elements of her implied-reciprocal-negative-easement claim.

 The supreme court has adopted the following as a "reasonably accurate general
statement" of the implied reciprocal negative easement doctrine:


 [W]here a common grantor develops a tract of land for sale in lots and pursues a
course of conduct which indicates that he intends to inaugurate a general scheme or
plan of development for the benefit of himself and the purchasers of the various lots,
and by numerous conveyances inserts in the deeds substantially uniform restrictions,
conditions and covenants against the use of the property, the grantees acquire by
implication an equitable right, variously referred to as an implied reciprocal negative
easement or an equitable servitude, to enforce similar restrictions against that part of
the tract retained by the grantor or subsequently sold without the restrictions to a
purchaser with actual or constructive notice of the restrictions and covenants.


Evans v. Pollock, 765 S.W.2d 465, 466 (Tex. 1990) (quoting Minner v. City of Lynchburg,
129 S.W.2d 673, 679 (Va. 1963)) (citations omitted). In order to impose a restrictive covenant by
implication on property retained by the original grantor, there must be evidence that (1) the grantor
intended to adopt a scheme or plan of development that encompassed both the property conveyed
and the property retained; and (2) the grantor subdivided the property into lots and included in the
deeds of the properties conveyed substantially uniform restrictions designed to further such scheme
or plan. Id. Under these circumstances, the burden the grantor has placed on the land conveyed
is, by operation of law, reciprocally placed on the land he retained. Saccomanno v. Farb,
492 S.W.2d 709, 713 (Tex. Civ. App.--Waco 1973, writ ref'd n.r.e.) (citing 20 Am. Jur. 2d
Covenants, Conditions and Restrictions § 733 (1965)). When seeking to impose the restrictive
covenant on property later sold by the grantor without restrictions, there must also be evidence that
the purchaser had actual or constructive notice of the existence of the restrictions on the other
properties included in the scheme or plan of development. See Evans, 792 S.W.2d at 466 (lots sold
by owner from development without express restrictions to grantee with notice of restrictions in
other deeds are burdened with implied reciprocal negative easement and may not be used in violation
of restrictive covenants burdening lots sold with express easements). The Saccomanno court
observed that "the doctrine should be used and applied with extreme caution, for it 'involves
difficulty' and lodges discretionary power in a court of equity to deprive a man of his property, to
a degree, by imposing a servitude by implication." Id. at 713. This practice is consistent with "the
settled rule in Texas that alleged restrictive clauses in instruments concerning real estate must be
construed strictly, and all doubts . . . resolved in favor of the free and unrestricted use of the
property." Id. (citing Baker v. Henderson, 153 S.W.2d 465, 470 (Tex. 1941), and Southampton Civic
Club v. Couch, 322 S.W.2d 516, 518 (Tex. 1959)).

 In its no-evidence motion for summary judgment, Crosswater asserted that there was
no evidence (1) that the original grantors, A.K. Stewart and Annie Stewart (and after his death Annie
Stewart individually and as executrix of his estate), intended to "inaugurate a general scheme or plan
of development" that encompassed both the Crosswater Tract and the tracts they partitioned and
conveyed, and (2) that they intended to prohibit the property from being used for commercial
enterprise. Dee was therefore required to produce evidence creating a fact issue, i.e., more than a
scintilla of evidence, as to whether the grantors did in fact intend a general scheme of development
that encompassed both the property sold later--the Crosswater Tract--and the tracts they partitioned
and conveyed and contemplated that none of that property would be used for commercial enterprise.

 Dee's summary-judgment evidence in this regard consisted of the affidavit of David
Jones, a title examiner, who averred as follows:


 All but one conveyance by Annie Stewart during her lifetime, other than conveyances
to her children, contained a restriction prohibiting commercial uses of the property. 
In addition, in conveying several of the tracts in the northwest part and southeast part
of Graveyard Point, A.K. and Annie Stewart granted broad easement rights across
land lying to the north of the tracts conveyed in the north western part of Graveyard
Point and to the east of the tracts conveyed in the south eastern part. As a title
examiner the scope of the easement rights in those deeds [] across the servient estate
are significant because they significantly limit the uses to which the servient estate
may be put. (5)



The Jones affidavit also referenced three other trial-court judgments in cases addressing similar
issues with respect to other pieces of property located on Graveyard Point.

 Dee's summary-judgment evidence does not create a fact issue with respect to
whether the original grantors intended to inaugurate a general scheme or plan of development that
included both the Crosswater Tract and the property they partitioned and conveyed and that restricted
the commercial use of that property. The fact that the original grantor inserts substantially similar
restrictions in deeds of property conveyed, standing alone, is not evidence of a scheme or plan of
development that can justify imposing a similar restriction on property the grantor retained. See
Saccomanno, 492 S.W.2d at 713 ("[T]he fact that in the deed of conveyance a grantor imposes
restrictions on a part of a tract which he sells and declares that the restrictions are to run with the
land does not, by itself, raise any legal or factual presumption that he means thereby to so restrict the
retained portion of the tract."); Cambridge Shores Homeowners Ass'n v. Spring Valley Lodge Co.,
422 S.W.2d 10, 13 (Tex. Civ. App.--Dallas 1967, no writ) (mere fact that deeds contain identical
restrictions is not alone sufficient to establish existence of general scheme); see also 144 A.L.R. 916
(1943) ("[T]he mere fact that a grantor imposes restrictions upon a lot conveyed raises no inferences
or implication that the remainder of his property not covered by the conveyances will be similarly
restricted."); 20 Am. Jur. 2d Covenants, Conditions and Restrictions § 168 (1965) (mere fact that
grantor imposes restrictions on part of land he is selling does not necessarily lead to conclusion that
he intended thereby to have restrictions apply to his remaining land). Although all but one of the
deeds for the smaller, landlocked lots conveyed to nonfamily members included restrictions on
commercial use, an intent to restrict the land retained by the grantor may not be inferred unless there
is additional evidence that the grantor intended, as part of a general scheme or plan of development, 
to restrict not merely the property sold but also a larger area that included the property retained. See
Cambridge Shores, 422 S.W.2d at 13; see also Green v. Gerner, 289 S.W. 999 (Tex. Comm'n App.
1927, judgm't adopted) ("Such fact construed in the light of the surrounding circumstances may or
may not be sufficient to support a finding of a general scheme."). In the present case, the
surrounding circumstances do not support an inference that Annie Stewart intended a general plan
or scheme of development for the entire Stewart Ranch, including the Crosswater Tract, that
prohibited commercial use. To the contrary, the surrounding circumstances, especially the
conveyances of large tracts of lakefront property without restrictions, suggest that she intended
that the lakefront properties were to be treated differently, i.e., that they could be used for
commercial enterprises.

 Thus, even if it could be inferred that A.K. Stewart and Annie Stewart did have a
general plan or scheme of noncommercial development, the summary-judgment evidence implies
that any such plan encompassed only the landlocked properties bounded by Chipmonk Road and did
not include lakefront tracts such as the Crosswater Tract. The landlocked properties lie above the
715' contour line of Lake Travis, a line that roughly follows Chipmonk Road. The properties below
that line are subject to an inundation easement the Stewarts granted the Lower Colorado River
Authority in 1940. We think it unlikely that A.K. and Annie Stewart would have intended to
include, as part of a development restricted to residential only, property that was subject to an
inundation easement. Such properties would appear to be better suited to uses that can accommodate
fluctuating water levels and occasional inundation--uses such as marinas and waterfront
campgrounds or other businesses that operate from floating docks.

 The evidence that 16 of the landlocked tracts were conveyed with easements over land
lying between them and the 670' contour line of Lake Travis does not serve to create a fact issue with
regard to a scheme of noncommercial development for the tracts across which the easements are
granted. Although Jones averred that the language of the easements confers "broad easement rights"
that "significantly limit the uses to which the servient estate may be put," these legal conclusions do
not constitute competent summary-judgment evidence. See Tex. R. Civ. P. 166a(f) (supporting
affidavits shall set forth facts as would be admissible in evidence). Jones's statements of his
subjective belief about the scope of the easements are no more than legal conclusions and do not
create a fact issue. See Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984) (holding that
statement in affidavit that "his contractual obligation had been modified" was nothing more than
legal conclusion). We note that the scope of Dee's easement is one of the issues in dispute between
Dee and Crosswater in the underlying cause from which the present claim was severed. We further
note that this Court has construed the scope of two of the easements referenced in Jones's affidavit
to grant much more limited rights than would be granted under Jones's interpretation--rights that
should not significantly limit the uses of the servient estates. See Harbor Ventures, Inc. v. Dalton,
No. 03-10-00690-CV, 2012 WL 1810205, at *9 (Tex. App.--Austin May 18, 2012, no pet. h.)
(mem. op.).

 Dee also attached as summary-judgment evidence the decisions of other trial courts
that have considered whether different pieces of property on Graveyard Point are subject to
restrictive covenants prohibiting commercial use through application of the doctrine of implied
reciprocal negative easement. As an initial matter, we note that the decisions of other trial courts are
not legally binding precedent on the trial court in this matter, nor on this Court. See Schook v. State,
344 S.W.2d 220, 221 (Tex. Crim. App. 1951). Moreover, findings in cases to which neither
Crosswater nor Dee was a party are not binding under either the doctrine of res judicata or collateral
estoppel. See Cisco Food Servs. Inc. v. Trapnell, 890 S.W.2d 796, 802 (Tex. 1995); W. S. Willy
v. McCain, 374 S.W.2d 871, 874 (Tex. 1964). The findings, conclusions, and judgments of other
trial courts relating to different property and involving different parties, facts, and arguments are
irrelevant and do not serve to create a fact issue with respect to the elements of Dee's claim in the
present case.

 Because Dee failed to produce more than a scintilla of evidence of a general scheme
or plan of development of noncommercial use that included the Crosswater Tract, the trial court
properly granted Crosswater's no-evidence motion for summary judgment on her claim that a
commercial-use restriction should be imposed on the Crosswater Tract through application of the
implied reciprocal negative easement doctrine. We overrule Dee's first appellate issue.

 In her second issue, Dee appears to contend that the trial court improperly refused to
grant her cross-motion for summary judgment that restrictions on the Crosswater Tract restrict its
commercial use. The record does not include such a cross-motion for summary judgment. The
second appellate issue is overruled.

 In her third issue, Dee contends that the summary judgment violated her constitutional
rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution because
(1) the trial court did not enter findings of fact or conclusions of law; (2) the hearing on the motion
for summary judgment was not transcribed; and (3) her "right to object" was taken away. First,
Dee has no right, constitutional or otherwise, to findings of fact and conclusions of law in a
summary-judgment proceeding. See Linwood v. NCNB Tex., 885 S.W.2d 102, 103 (Tex. 1994)
(findings of fact and conclusions of law have no place in summary-judgment proceeding); see also
IKB Indus. v. Pro-Line Corp., 938 S.W.2d 440, 441 (Tex. 1997) (if summary judgment is proper,
there are no facts to find and legal conclusions have already been stated in motion and response;
therefore "[t]he trial court should not make, and an appellate court cannot consider, findings of fact
in connection with a summary judgment"). Likewise, Dee has no right, constitutional or otherwise,
to a record of the non-evidentiary summary-judgment hearing. Moreover, Dee's counsel could have,
but apparently did not, request that the hearing be transcribed. Finally, Dee does not explain how
her "right to object" was taken away. Dee filed a response to the motion for summary judgment and
objections to Crosswater's summary-judgment evidence, some of which were sustained. She filed
a post-judgment motion for new trial and request for findings of fact and conclusions of law. Dee
does not identify, and we are unable to discern, any manner in which her right to object, either to the
evidence submitted or arguments made by Crosswater or to the trial court's rulings, was taken away.
Dee also asserts in her third appellate issue that the trial court was not impartial based on comments
she claims were made during the hearing on the motion for summary judgment. Because there is no
reporter's record, any such comments are not part of the appellate record. Accordingly, no error or
abuse of discretion is shown. See Enterprise Leasing of Houston v. Barrios, 156 S.W.3d 547, 549
(Tex. 2004) (per curiam) (appellant bears burden to bring forward appellate record that enables
appellate court to determine whether appellant's complaints constitute reversible error); Christiansen
v. Prezelski, 782 S.W.2d 842, 843 (Tex. 1990) (burden is on appellant to present sufficient record
to show error requiring reversal). Similarly, her contention that the trial court was biased due to
social associations with counsel for Crosswater is unsupported by any evidence in the record. We
overrule Dee's third appellate issue.


CONCLUSION

 Having overruled Dee's three appellate issues, we affirm the trial court's judgment.


 _____________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed: May 18, 2012
1. The affidavit of David Jones, a title examiner, which was part of Dee's summary judgment
evidence, indicates that between 1943 and 1952 A.K. and Annie Stewart, or Annie Stewart
individually and as executrix of A.K. Stewart's estate, conveyed 40 such tracts.
2. In 1940 A.K. and Annie Stewart granted the Lower Colorado River Authority an easement
to inundate their property up to the 715' contour line of Lake Travis.
3. Typically, the deeds included the following language: "It is agreed and understood that no
commercial enterprise shall ever be operated upon said land herein conveyed."
4. The landlocked tracts ranged in size from 0.35 to 0.77 acres, whereas the lakefront lots
ranged in size from 1.65 to 2.97 acres.
5. Jones also averred that


 [a]s a title examiner, the terms of the conveyances by A.K. Stewart and Annie
Stewart in Exhibits 1 through 53, taken as a whole, reflect an intended general
scheme or plan of development by A.K. Stewart and Annie Stewart that would
prohibit [the Crosswater Tract] from being used for the operation of a commercial
or business enterprise.


The trial court sustained Crosswater's objection to this paragraph of the affidavit, and Dee does not
challenge this ruling on appeal.